Sean Kealii Enos (#023634)
Jeffrey W. Johnson (#024435)
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Telephone: (480) 655-0073
Facsimile: (480) 655-9536
kenos@IPlawUSA.com
jjohnson@IPlawUSA.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Dent, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>Lotto Sport Italia S.p.A, an Italian Corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT UNDER 15 USC 1114 FOR REVERSE DOMAIN HI-JACKING, DECLARATORY RELIEF UNDER THE LANHAM ACT, AND TORTIOUS INTERFERENCE WITH CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David Dent (hereinafter "Dent" or Plaintiff) hereby complains against defendant Lotto Sport Italia S.p.A, an Italian Corporation (hereinafter "Lotto Sport"), and for its causes of action alleges as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff Dent against Defendant Lotto Sport pursuant to 15 U.S.C. 1114(2)(D)(iv)-(v) and for declaratory relief pursuant to 28 U.S.C. 2201 to establish that Dent's registration and use of the internet domain names

- 1 -

<lottoworks.com> and <lottostore.com> (the "Domain Names") is not unlawful under the Anticybersquatting Consumer Protection Act (15 U.S.C. $ 1125(d)("ACPA"), or otherwise under the Lanham Act (15 U.S.C. $ 1051 et. seq.), and to prevent the transfer of the Domain Names to Defendant, which were ordered in an administrative panel decision notified on February 21, 2017 under the Uniform Domain Name Dispute Policy ("UDRP") in a proceeding captioned: *Lotto Sport Italia S.p.A. v. David Dent*, WIPO Case No. D2016-2532.

## PARTIES

2.   Plaintiff David Dent is a citizen and resident of Canada, having an address of 4467 Harris Place, North Vancouver, British Columbia V7G 1E9, Canada.

3.   On information and belief, Defendant Lotto Sport s.p.A is a corporation of Italy having a principal address of Via Montebelluna, 5/7 31040 Trevignano (Treviso), Italy.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over this action because it involves a federal question, and because it requires a declaration of rights and other legal relations.  More specifically, this Court has jurisdiction pursuant to 28 U.S.C. 1331 (because this cause arises under 15 U.S.C. 1114 in that Plaintiff is the registrant of a domain name which has been suspended, disabled, or transferred under a policy provided by the registrar thereof relating to alleged conflict with a trade or service mark claimed by the Defendant), and under 28 U.S.C. 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

interested party seeking such declaration, whether or not further relief is or could be sought.").

5. This Court has personal jurisdiction over Defendant Lotto Sport because Defendant agreed to submit to the jurisdiction of this Court when it initiated an administrative proceeding pursuant to the Uniform Domain Name Dispute Resolution Policy (the "UDRP") concerning the Domain Name. Specifically, Defendant Lotto Sport agreed in its UDRP complaint to submit to jurisdiction of the registrar in connection with a challenge of a UDRP decision ordering a transfer of the Domain Names.

6. The registrar for the Domain Names is GoDaddy LLC, having its principal office at 14455 N Hayden Rd Suite 219, Scottsdale, Arizona 85260, in this judicial district.

7. Defendant Lotto Sport has directed activity into this judicial district with the intent to deprive Plaintiff Dent of rights under a contract having a situs in this judicial district.

8. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(1) and (2). In addition, the relevant sponsoring registrar, GoDaddy.com, Inc. ("GoDaddy"), is located within this Judicial District, and the registration contract for domain names with GoDaddy provides that jurisdiction and venue over disputes in relation to the contract is Arizona, stating that "(N) Exclusive Venue for Other Controversies. GoDaddy and you agree that any controversy excluded from the dispute resolution procedure and class action waiver provisions in this Section (other than an individual action filed in small claims court) shall be filed only in the Superior Court of Maricopa County, Arizona, or the United States District Court for the District of Arizona, and each party hereby

irrevocably and unconditionally consents and submits to the exclusive jurisdiction of such courts for any such controversy.  You also agree to waive the right to trial by jury in any such action or proceeding."

9. Pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") Paragraph 3(b)(xiii), the Complainant (in this case, now Defendant) is required to explicitly consent to a "mutual jurisdiction," in which challenges to a decision under the UDRP may be brought by the Respondent (in this case, now Plaintiff).  As discussed below, Defendant expressly consented to jurisdiction in this District for actions such as this one.

## FACTS

10. Plaintiff Dent is a co-founder, majority owner and principal of Trimark Ltd., a Gibraltar corporation engaged in the development and licensing of software and technical services for online gambling operators in jurisdictions where such operations are licensed for operation.  Through his company Trimark Ltd. and predecessor organizations, the Dent has been involved in the development and licensing of software relevant to the conduct of lottery, bingo and casino games for over ten years prior to this action.

11. In 2016, a company which had contracted to distribute Plaintiff's software discontinued operations, and the Plaintiff decided to continue the development of his operations into providing direct online lottery gambling services to the public in such jurisdictions where online lottery gambling can be licensed.

12. Pursuant to the Plaintiff's decision to expand into direct lottery gambling services, the Plaintiff expended substantial resources for software and user interface development, and other operation planning and preparations.  Plaintiff additionally

sought to find two domain names to establish an online presence for the eventual launch of the expanded services, such that one domain name would be used for corporate operations and licensing matters, and the other domain name would be the Plaintiff's online presence for lottery gaming services.

13.     The term "lotto" is a generic word long defined as, for example, "a game resembling bingo" by Webster's New World Dictionary, Third College Edition, 1988 (Simon & Schuster), and is commonly used in reference to lotteries.

14.     The term "lotto" is generic in relation to gambling software services long provided by the Plaintiff through the companies of which Plaintiff is a principal, and is directly generic of the services which the Plaintiff has been preparing to launch.

15.     The United States Patent and Trademark Office has repeatedly and consistently recognized that "lotto" is a generic term in connection with services essentially identical to Plaintiff's services, and has required specific disclaimers of exclusive rights in the word "lotto" in relation to gaming services in a large number of marks registered or pending on the Principal Register under the Lanham Act.   For example, as recently as May 7, 2015, in relation to an application to register "CLOVER LOTTO" and design, US TM Reg. No. 4,965,712, the United States Patent Office issued an Office Action referring to the dictionary definition of the word "lotto" and stating:

> "Applicant must disclaim the word "LOTTO" because it merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services, and thus is an unregistrable component of the mark.  See 15 U.S.C. §§1052(e)(1), 1056(a); DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd., 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012)

(quoting In re Oppedahl & Larson LLP, 373 F.3d 1171, 1173, 71 USPQ2d 1370, 1371 (Fed. Cir. 2004)); TMEP §§1213, 1213.03(a).  The attached evidence from an online dictionary shows this word to refers to "a game of chance similar to bingo".  Applicant has identified gaming software encompassing that for use in playing lotto type games.  Therefore, the wording merely describes the nature or function of the identified goods."

16.     In late 2016, the Plaintiff Dent found two domain names listed online for sale by their respective registrants which are directly descriptive of the Plaintiff's business.   The Plaintiff proceeded to purchase the domain name lottoworks.com for company operations and lottostore.com for a direct lotto game storefront.  The Plaintiff purchased lottostore.com in September 2016 for $4820, and then purchased lottoworks.com in December 2016 for $6500.

17.     While Plaintiff prepared to launch its sites under the respective domain names, Plaintiff chose to register the domain names with Godaddy LLC, an internet domain name registrar located in this judicial district, pursuant to a registration contract having a situs in this judicial district.

18.     The domain registration contract governing Plaintiff's registration of the Domain Names with GoDaddy LLC incorporates a non-binding "Uniform Domain Name Dispute Resolution Policy (UDRP)", under which a third party may request transfer of rights under said contract to that third party on the basis of a claim of trade or service mark rights.  The UDRP is an administrative proceeding, which provides in pertinent part:

"k. **Availability of Court Proceedings**. **The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either**

**you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded.** If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name." (Emphasis Added)

19. On or about December 14, 2016, in spite of the generic and descriptive nature of the term Lotto, and in spite of the fact that the Plaintiff does not compete in any way with Defendant, and does not (and given the nature of the mark and products, could not) utilize the domain names in a way that might infringe upon any rights

Defendant might have, at nearly the same time the Plaintiff had purchased the lottoworks.com domain name, the Defendant Lotto Sport proceeded to file a complaint under the UDRP with the World Intellectual Property Organization.

20.  In the UDRP Complaint, Defendant Lotto Sport admitted to the jurisdiction of this court as follows:

"**IX.  Mutual Jurisdiction**

(Rules, para. 3(b)(xiii))

[15.]  In accordance with Paragraph 3(b)(xiii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar"

21.  In the UDRP Complaint, the Defendant Lotto Sport represented itself to be an "Italian clothing company" with various foreign trademark claims to "LOTTO" for clothing.

22.  Notwithstanding the fact that Plaintiff Dent had purchased the domain names mere weeks and days before Defendant Lotto Sport proceeded with its Complaint, and notwithstanding the considerable development effort in which Plaintiff was engaged, the Defendant Lotto Sport alleged that the fact that Plaintiff Dent had not immediately deployed websites for the domain names was demonstrative of "bad faith" intent predicated on the Lotto Sport's asserted foreign trademark claims.

23.  Plaintiff had never heard of the Defendant Lotto Sport prior to notice of the UDRP filing, and did not know of the Defendant's UDRP Complaint until

discovering that GoDaddy LLC had disabled the Plaintiff's access to and control of the Domain Names.  Within days after assuming control of the lottoworks.com domain name, Plaintiff attempted to de-activate the domain name from directing to the "parking" website to which the previous registrant had directed the domain name.  The Plaintiff was unable to de-activate the previous registrant's configuration of the domain name, because GoDaddy LLC had locked the domain name in response to receipt of the Defendant's UDRP Complaint.  The Plaintiff has been unable to exercise control over the domain name as a result of the Defendant's action.

24. On February 21, 2017, the World Intellectual Property Organization notified the parties and GoDaddy LLC of a decision issued by a Hong Kong attorney ordering transfer of the domain names to the Defendant.

25. Under the UDRP, GoDaddy LLC will transfer Plaintiff's Domain Names to the Defendant Lotto Sport unless legal action for independent determination of the Plaintiff's rights is commenced by Plaintiff in this judicial district, as designated under the registration contracts for the domain names by GoDaddy LLC and as agreed to in the "Mutual Jurisdiction" provision to which the Defendant has expressly admitted to be subject.

26. On information and belief, the Defendant possesses no common law trade or service mark rights and no rights under the Lanham Act in connection with the conduct of lotto gambling operations.

27. The Plaintiff does not manufacture, produce or sell clothing of any kind.

**FIRST CLAIM FOR RELIEF**
**(REVERSE DOMAIN HI-JACKING)**
**[15 U.S.C. 1114(2)(D)(IV)-(V)]**

28. Plaintiff incorporates the allegations set forth in paragraphs 1 through 27 above.

29. Plaintiff's Domain Names have been locked, preventing Plaintiff from exercising the full enjoyment of the benefits of registration thereof as a consequence of false statements made by Defendant in a dispute policy proceeding (the UDRP) followed by the domain registrar GoDaddy LLC.  The Domain Names have been ordered transferred, and will be transferred to Defendant but for this Action.

30. Plaintiff has provided Defendant with notice of this Action.

31. Plaintiff has incurred costs in seeking to prevent transfer of the Domain Names as a consequence of Defendant's false statements.

32. Plaintiff's registration and/or use of the Domain Names do not violate any cognizable right of the Defendant under the Lanham Act.

## SECOND CLAIM FOR RELIEF
## (DECLARATORY RELIEF - NON VIOLATION OF LANHAM ACT)
## [28 U.S.C. § 2201]

33. Plaintiff incorporates the allegations set forth in paragraphs 1 through 32 above.

34. Plaintiff's registration and/or use of the Domain Names does not violate Defendant's rights under the Lanham Act. In registering the Domain Name, Plaintff did not have "bad faith intent," as provided in 15 U.S.C. 1125(d)(1)(A)(i), to profit from Defendant's alleged trademark. At the time Plaintiff registered the Domain Names and at all times subsequent, the Plaintiff has intended to use the domain names for legitimate purposes, including in conjunction with the conducting of lotto games, and

has invested substantial resources beyond the $11,500 paid out of pocket for the domain names.

35.     Plaintiff had reasonable grounds to believe that its registration and/or use of the Domain Names was a fair use or otherwise lawful use, as provided in 15 U.S.C. 1125(d)(1)(B)(ii) in accordance with the directly descriptive meanings of "lotto", "works" and "store".   Plaintiff had received legal counsel that pursuing trademark registration corresponding to the domain names would be a fruitless exercise on the grounds that the terms at issue were entirely descriptive of the Plaintiff's intended use.

36.     On information and belief, Defendant had not engaged in interstate commerce in the United States of America in connection with the manufacture, sale, or transportation of any goods or services relating to the conduct of lotto games and denominated "LOTTO STORE" or "LOTTO WORKS", or any colorable variation thereof, at the time the Domain Names were registered by Plaintiff, and subsequent to that time.

37.     Plaintiff reasonably believes its registration and use of the Domain Names was and is lawful under the Lanham Act.

38.     There is an actual controversy with respect to whether the Defendant is entitled to transfer of the Domain Name based on Defendant's rights under the Lanham Act.

39.     In the absence of a declaration from the Court, GoDaddy LLC will transfer the Domain Name to the control of Defendant, and Plaintiff will suffer immediate and irreparable harm.

40.     Plaintiff's registration and use of the Domain Names does not, and is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

connection or association of Plaintiff with Defendant, or as to the origin, sponsorship, or approval of Plaintiff's goods, services, or commercial activities by Defendant.

41. Plaintiff's registration and use of the Domain Names do not misrepresent the nature, characteristics, qualities, or geographic origin of Plaintiff's or Defendant's goods, services, or commercial activities.

42. Plaintiff's domain names are directly descriptive and/or generic to the Plaintiff's activities in connection with the conduct of lotto games.

### THIRD CLAIM FOR RELIEF
### (TORTIOUS INTERFERENCE)

43. Plaintiff incorporates the allegations set forth in paragraphs 1 through 42 above.

44. Knowing its allegations were not "complete and accurate", Defendant certified otherwise in its UDRP complaint, and claimed that the Plaintiff had "registered and used [the domain names] in bad faith" relative to the Defendant's asserted foreign rights for marks for clothing. Defendant did so for the purpose of depriving the Plaintiff of its rights under the domain registration contract.

45. Defendant's misrepresentations in the UDRP Complaint were made for the purpose of inducing a mis-application of the dispute policy of Plaintiff's domain registration contract, to cause breach thereof in that the UDRP panel was misled, and the UDRP was mis-interpreted and mis-applied in the course of the UDRP Proceeding.

46. Defendant's misrepresentation of Plaintiff's intent in registering the domain names were made for the purpose of depriving Plaintiff of the benefit of Plaintiff's registration contracts with GoDaddy LLC, and transferring such benefits to Defendant.

**DEMAND FOR JURY TRIAL**

47. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Dent hereby demands a trial by jury for all issues triable of right by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dent demands judgment against Defendant Lotto Sport as follows:

1. Declaration by the Court, pursuant to 28 U.S.C. §2201, that plaintiff's registration, ownership and use of the Domain Names <lottostore.com> and <lottoworks.com> is lawful and proper and does not infringe on any right the Defendant may claim in the United States;

2. A Judgment that Defendant has attempted unlawfully to interfere with Plaintiff's rights and expectations under its domain name registration contract and has induced a breach thereof by making false statements resulting in mis-application of the dispute policy embodied therein;

3. Cost and expenses, including costs under 15 U.S.C. 1114(2)(D)(iv)-(v) and reasonable attorneys' fees;

4. As this is an action "involving a violation of 15 USC 1125(d)(1)" by way of determining that no such violation in fact has occurred, "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just" as provided under 15 USC 1117(d); and

5. For such other and further relief as this Court deems just and proper.

DATED this 3rd day of March, 2017.

                                SCHMEISER, OLSEN & WATTS LLP

                                By:

                                */Jeffrey W. Johnson /*

                                Sean K. Enos
                                Jeffrey W. Johnson
                                SCHMEISER, OLSEN & WATTS, LLP
                                18 E. University Drive, Suite 101
                                Mesa, Arizona 85201
                                Attorneys for Plaintiff