Marc J. Randazza, AZ Bar No.: 27861
Ronald D. Green, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Defendant,*
*Lotto Sport Italia, S.p.A.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| DAVID DENT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LOTTO SPORT ITALIA S.P.A., an Italian Corporation,<br><br>Defendant. | Case No. CV-17-651-PHX-ROS<br><br>**MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 12(b)(6)** |

Defendant Lotto Sport Italia, S.p.A. moves this Court to dismiss the First and Third Claims for Relief asserted by Plaintiff David Dent in the Complaint filed on March 3, 2017 for failure to state a claim upon which relief may be granted. This Motion is made pursuant to Fed. R. Civ. P. 12(b)(6) and is based upon the attached memorandum of points and authorities, the papers and pleadings on file in this action, and any oral argument permitted by this Court.

## 1.0 INTRODUCTION

Plaintiff David Dent is a cybersquatter. In late 2016, he registered two domain names containing the entirety of marks owned by Defendant Lotto Sport Italia, S.p.A. ("Lotto") and immediately attempted to sell them for a profit while populating one of the sites with links to products of Lotto's competitors. To protect its internationally-



RANDAZZA | LEGAL GROUP

recognized and registered trademark rights, Lotto filed an arbitration before the World Intellectual Property Organization under the Uniform Domain-Name Dispute-Resolution Policy (the "UDRP"). The arbitrator agreed that Dent unlawfully registered the domain names and ordered that they be transferred to Lotto.

Dent, like many cybersquatters, understands that litigation costs will sometimes convince his victims to pay him off, rather than pay to defend actions such as this one. This is Dent's motivation for this action. Dent asserted claims against Lotto for Reverse Domain Name Hijacking and Tortious Interference.[1] Neither the facts nor the law support Dent's assertion of these claims, which were apparently included in the Complaint to threaten Lotto with the possibility of money damages. Lotto respectfully requests that this Court grant this Motion and dismiss them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## 2.0 STATEMENT OF RELEVANT FACTS

### 2.1 Defendant's use of the LOTTO marks

Defendant Lotto is a world-famous company that distributes sport and recreational clothing and footwear to the United States and over 110 additional countries throughout the world. (*See* UDRP Complaint, at ¶ 12, attached hereto as **Exhibit A**.) The company was founded in 1973 and initially concentrated its business on the manufacture of tennis, basketball, volleyball, soccer, and athletics footwear. (*See id.*) That concentration quickly expanded to include sportswear and sports equipment in addition to footwear. (*See id.* at ¶ 13.)

[1] There is no common-law claim entitled "tortious interference." For purposes of this Motion and based upon the allegations of the Complaint, Lotto presumes that Dent asserted a claim against Lotto for "intentional interference with contractual relations."



RANDAZZA | LEGAL GROUP

Almost from its inception, internationally renowned athletes, particularly tennis players and basketball teams, began wearing Lotto's products and participating in perfecting the design and performance of those products. (*See id.*) By the 1980s, the list of famous athletes and sports teams endorsing Lotto's products included John David Newcombe, Alberto Mancini, Carlo Ancelotti, Ruud Gullit, Martina Navratilova, Boris Becker, Thomas Muster, and the Dutch football team. (*See id.* at ¶¶ 13-14.) Within a decade of its founding, Lotto was available in more than 60 countries. (*See id.* at ¶ 14.)

By the 1990s, Lotto was sponsoring the national soccer teams of several countries, including Holland, Switzerland, Serbia, Croatia, and Costa Rica. (*See id.* at ¶ 15.) It was additionally sponsoring many prominent soccer clubs around the world, such as Queens Park Rangers, Milan, Juventus, Tampa Bay Rowdies, Sacramento Republic, Arizona United, Gate City FC, among many others). (*See id.*) In 1994, Lotto joined the Football World Cup in the United States, and its prominence in the U.S. and throughout the world continued to rise continuing to the present. Its products have been prominently featured in the Football World Cup and in the World Tennis Association. (*See id.*)

The LOTTO brand and marks have been synonymous with quality manufactured sporting goods for over 40 years thanks to the company's ability to combine innovation and technology with design and safety. That commitment to innovation is additionally reflected in the safety and work apparel and shoes that Defendant provides under the LOTTO WORKS marks. Those goods are prominently marketed throughout the world, and the LOTTO WORKS mark has been continuously used by Plaintiff for over 10 years. (*See id.* at ¶ 19.)

Defendant Lotto is active on the World Wide Web. It sells its products and markets those products to consumers on the internet. Lotto's primary domain name is

RANDAZZA | LEGAL GROUP

<lottosport.com>, which was registered in and has been in use since 1996. (*See* WhoIs Report for <lottosport.com>, attached hereto as **Exhibit B**.) However, it owns numerous other domains, including <lottoworks.net>, which it registered in 2004. (*See* WhoIs Report for <lottoworks.net>, attached hereto as **Exhibit C**.)

### 2.2 Defendant's rights in the LOTTO marks

As noted, Defendant Lotto has been continuously using the LOTTO marks since 1973. Lotto uses the LOTTO mark in more than 110 countries. It has additionally registered the mark in more than 100 countries. Lotto maintains numerous registrations with the United States Patent and Trademark Office (the "USPTO") for the LOTTO family of marks, including but not limited to:

a. LOTTO (and design) (U.S. Reg. No. 1,023,806) for sporting footwear, which registered on October 28, 1975 (attached hereto as **Exhibit D**);

b. Lotto design mark (U.S. Reg. No. 1,378,169) for clothing and gymnastic and sporting equipment, which registered on January 14, 1986 (attached hereto as **Exhibit E**);

c. LOTTO (and design) (U.S. Reg. No. 1,379,243) for clothing and gymnastic and sporting equipment, which registered on January 21, 1986 (attached hereto as **Exhibit F**);

d. LOTTO (U.S. Reg. No. 2,347,644) for clothing, which registered on May 2, 2000 (attached hereto as **Exhibit G**);

e. LOTTO (and design) (U.S. Reg. No. 2,514,566) for bathroom and beauty products, materials related to eyeglasses, and office and home office supplies, which registered on December 4, 2001 (attached hereto as **Exhibit H**);



RANDAZZA | LEGAL GROUP

f. LOTTO (and design) (U.S. Reg. No. 4,148,339) for leather goods, clothing, games, and playthings, and retail and wholesale store services, which registered on March 13, 2012 (attached hereto as **Exhibit I**);

g. LOTTO LEGGENDA (U.S. Reg. No. 3,864,425) for leather goods, clothing, games and playthings, and retail and wholesale store services, which registered on October 19, 2010 (attached hereto as **Exhibit J**); and

h. LOTTO WORKS (U.S. Serial No. 79/205,885) for materials related to eyeglasses and clothing, filed on October 27, 2016 (attached hereto as **Exhibit K**).

Many of these registrations have been deemed incontestable by the USPTO. None of Defendants' registrations have been challenged, cancelled, or abandoned. Moreover, while Defendant currently only has an application filed with the USPTO for LOTTO WORKS, it has been using that mark for over 10 years. It has obtained a registration for LOTTO WORKS in the European Union since August 7, 2009 by means of EUTM registration no. 8479644. (*See* TSDR Report from USPTO Website for LOTTO WORKS, attached hereto as **Exhibit L**; *see also* EUTM File Information for LOTTO WORKS, attached hereto as **Exhibit M**.)

### 2.3 Plaintiff's unlawful use of Defendant's LOTTO marks

Plaintiff David Dent is a resident of North Vancouver, British Columbia, Canada who registered <lottostore.com> and <lottoworks.com> (the "Infringing Domain Names"). By his own admission, he purchased the registration for <lottostore.com> for $4,820.00 in September 2016 and for <lottoworks.com> for $6,500.00 in December 2016. (*See* Complaint, at ¶ 16.) These amounts far exceed the amount that any domain name

RANDAZZA | LEGAL GROUP

registrar charges for the registration of a domain name, and it is unreasonable to think that such domains would have such inherent value.

Plaintiff's <lottoworks.com> domain name contains the entirety of the plaintiff's trademark - LOTTO WORKS. That much, anyone can see. At the time that Plaintiff Dent registered that Infringing Domain Name, Defendant Lotto had been using that exact mark for approximately 10 years, had obtained a registration for the mark in the European Union, had registered and used a domain name containing the mark with <lottoworks.net>, and had applied for reciprocal registration with the USPTO. After Plaintiff registered that Infringing Domain Name, he directed it to a website that offered the Infringing Domain for sale for a profit. (*See* Front page of <lottoworks.com>, attached hereto as **Exhibit N**.) The site also contained links to Lotto's competitors as established by the panel in the UDRP and demonstrated from a screenshot of the registration information for the Infringing Domain Name. (*See Lotto Sport Italia S.p.A. v. David Dent*, WIPO Case No. D2016-2532 (Feb. 13, 2017), attached hereto as **Exhibit O**; *see also* WhoIs Report for <lottoworks.com>, attached hereto as **Exhibit P**.) The panel correctly found that Dent was responsible for the content contained on the website associated with <lottoworks.com> and that it constituted evidence of Dent's bad faith. (*See Lotto Sport Italia, S.p.A. v. David Dent.*)

Accordingly, Dent registered a domain name that was the precise mark owned by Lotto Sport, then offered it for sale for a profit, and while waiting to make that profit, he also provided advertising to Lotto's competitors to draw internet traffic to his domain name. Despite all this, Dent comes to this Court claiming that he was somehow unjustly treated in the arbitration.

RANDAZZA | LEGAL GROUP

Plaintiff's <lottostore.com> domain name is a similar story. The domain name contains the entirety of Defendant Lotto's LOTTO mark, along with the descriptive word "store." The domain was also confusingly similar to Lotto's <lottosport.com> domain name, which has been used since 1996.

Given that Lotto's merchandise is sold to consumers throughout the world in online and brick-and-mortar retail locations, an Internet user would anticipate that the <lottostore.com> Infringing Domain Name would direct the user to Lotto's online store. However, it did not. Rather, that domain also redirected to a website offering it for sale for Plaintiff's profit. (*See* Front page of <lottostore.com>, attached as **Exhibit Q**.)

One might creatively try and argue that "Lotto Store" doesn't necessarily mean Lotto Sport Store. However, given that the <lottoworks.com> domain was so obviously a bad faith registration and use, it is clear that Dent targeted Lotto Sport Italia, and hoped that his cyberpiracy would pay out a tidy little profit. Instead, it paid out in the form of an arbitration loss.

Upon discovering Dent's abuse of its trademarks in the Infringing Domain Names, Defendant Lotto commenced a domain name arbitration under the Uniform Domain-Name Dispute-Resolution Policy (the "UDRP") before the World Intellectual Property Organization ("WIPO") on or about December 14, 2016, mere days after Dent purchased and unlawfully registered the domain. On February 13, 2017, a WIPO panelist determined that Dent's registration of the Infringing Domain Names violated the UDRP and ordered that the domains be transferred to Lotto. (*See Lotto Sport Italia S.p.A. v. David Dent.*) Among the reasons that the panel ruled on Lotto's behalf were: that Dent lied about when he registered the <lottoworks.com> Infringing Domain so that it would appear that his rights predated Lotto's; that one of the sites associated with the Infringing Domain Names



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

offered links to Lotto's competitors; that Dent's argument that he had never heard of Lotto was disingenuous; and that Dent had not used either of the Infringing Domain Names for any bona fide good or service. (*See* **Exhibit O** at pg. 7, § C.)

Seeking to avoid transfer of the Infringing Domain Names, Plaintiff Dent filed this action, asserting meritless claims against Lotto. For the reasons set forth below, this Motion should be granted, and this case should be dismissed.

## 3.0 LEGAL ARGUMENT

### 3.1 Plaintiff's First and Third Claims for Relief should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a claim that fails to state a claim for relief upon which relief can be granted. While the court should assume the factual allegations contained in the complaint are true, it should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is proper if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

Normally when deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the court is limited to the allegations contained in the complaint, and if the court considers material outside of the complaint, the motion to dismiss should be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). However, there are exceptions to this rule. Documents attached to the complaint may be considered by the court without converting a motion to dismiss into a motion for summary judgment. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Documents that are not attached to the complaint may be considered if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies" on the documents. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).

Finally, the court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *see also* FRE 201(b)(2) (judicial notice may be taken for documents that "can be accurately and readily determined from sources whose authenticity cannot reasonably be questioned"). The public records of administrative agencies are appropriate for judicial notice, and a court should take judicial notice of materials available through the USPTO, such as trademark registrations. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *Dahon N. Am., Inc.v. Hon*, 2012 U.S. Dist. LEXIS 57510, at *8 (C.D. Cal. July 7, 2014). A court's decision to take judicial notice is reviewed for abuse of discretion. *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995).

**3.2 First Claim for Relief – Reverse Domain Name Hijacking**

Dent's First Claim for Relief for Reverse Domain Name Hijacking ("RDNH") actually contains two separate claims. *See, e.g., Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936 (D. Nev. 2010). First, he asserts a claim under 15 U.S.C. § 1114(2)(D)(iv) for fraud in the UDRP, which would give him the right to recover the Infringing Domain Names as well as an award of damages, attorneys' fees, and costs if Lotto made a "knowing and material misrepresentation" to the registrar that the Infringing Domain Names were "identical to, confusingly similar to, or dilutive of" Lotto's marks. He next asserts a claim for RDNH under 15 U.S.C. § 1114(2)(D)(v), which would give him the right to recover the Infringing Domain Names if his registration and use of them was lawful. Claims under subsection (v) do not provide for recovery of damages, attorneys' fees or costs. Lotto will deal with each claim separately.



RANDAZZA | LEGAL GROUP

3.2.1 *Fraud in Domain Dispute Proceeding*

As evidenced above, Lotto has strong registered and common law rights in the LOTTO marks, including the LOTTO WORKS marks, and has been providing services under those marks for over 40 years. It has numerous registrations for LOTTO and variants thereof, many of which have been deemed incontestable by the USPTO. Dent's <lottoworks.com> Infringing Domain Name contains the entirety of Lotto's LOTTO WORKS mark, and <lottostore.com> contains the entirety of Lotto's LOTTO mark with a descriptive term for an online or brick-and-mortar location where consumers would expect to buy Lotto's products.

A party violates 15 U.S.C. § 1114(2)(D)(iv) when it makes "a knowing and material misrepresentation … that a domain name is identical to, confusingly similar to, or dilutive of a mark." This rule is intended to protect domain registrants from abusive and overzealous trademark owners. *See Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 959 (D. Nev. 2010). In this case, Lotto did not make any "knowing and material" misrepresentations. In fact, it made no misrepresentations to WIPO at all.

Lotto informed WIPO that Dent's <lottoworks.com> Infringing Domain Name is identical to Lotto's LOTTO WORKS mark, and his <lottostore.com> Infringing Domain Name contains the entirety of the LOTTO mark combined with a descriptive word describing where consumers might purchase the products that Lotto sells under the LOTTO mark. It truthfully represented its trademark rights to the WIPO panelist and truthfully described the material on Dent's websites. The panelist correctly found that both



RANDAZZA | LEGAL GROUP

Infringing Domain Names are, at the very least, confusingly similar to Lotto's LOTTO and LOTTO WORKS marks. (*See Lotto Sport Italia S.p.A. v. David Dent.*)[2]

It is telling that Dent accuses Lotto of making misrepresentations to WIPO but fails to identify what those specific misrepresentations are. He just says it, without support. On the other hand, Dent actually did make documented misrepresentations in the UDRP proceeding. The arbitrator actually made findings that Dent lied, and in part this supported the contention that Dent acted in bad faith. (*See Lotto Sport Italia, S.p.A. v. David Dent*, at ¶ 6.C (stating that Dent "conveniently omitted" the actual date he registered the Infringing Domain and finding that it, with other factors "amounts to bad faith registration and use"). Thus, this claim for relief fails and should be dismissed.

3.2.2 *Reverse Domain Name Hijacking*

To prevail on an RDNH claim under 14 U.S.C. § 1114(2)(D)(v), Dent must demonstrate that (1) he registered a domain name; (2) that was "suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II)"; (3) "that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action; and (4) "that [his] registration or use of the domain name is not unlawful." *AIRFX.com v. AirFX, LLC*, 2012 U.S. Dist. LEXIS 120285, *15 (D. Ariz. Aug. 23, 2012) (*quoting Ricks*, 727 F. Supp. 2d at 959.) In this instance, Dent admittedly met the requirements of prongs one through three of this test. However, he is unable to meet the fourth prong, necessitating that this claim be dismissed.

Pursuant to the Anti-Cybersquatting Consumer Protection Act (the "ACPA"), a person is liable for cybersquatting if he registers a domain name containing another's

---

[2] The WIPO panelists decision can be considered without converting this Motion to a motion for summary judgment. It is a public record, and Dent relies upon it heavily in his Complaint.



RANDAZZA | LEGAL GROUP

trademark or is confusingly similar to another's trademark "with a bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A). Courts may discern bad faith through a myriad of factors, including: (1) the alleged cybersquatter's trademark rights, if any, in the domain name; (2) the extent to which the domain name consists of the alleged cybersquatter's legal name or is commonly used to identify him; (3) the alleged cybersquatter's prior use of the domain in connection with the bona fide offering of goods or services; and (4) the alleged cybersquatter's attempts to sell the domain name, whether to the mark owner or a third party, for a profit. *See* 15 U.S.C. § 1125(d)(1)(B). Examination of these factors makes clear that Dent is a cybersquatter.

Dent registered two domain names that contained the entirety of Lotto's marks. He immediately attached them to websites, which contained links to Lotto's competitors and offered the Infringing Domain Names for sale. To try and evade the low-impact liability of a transfer of the domain name, he lied to the WIPO panelist about when he registered <lottoworks.com>. He did so in an attempt to deceive WIPO into thinking his registration of the domain preceded Lotto's use of the LOTTO WORKS mark. Dent admittedly has no trademark rights in either of the Infringing Domain Names and does not allege that he is commonly known by any of the terms contained in either Infringing Domain Name. (*See* Complaint, at ¶¶ 13-15.)

Dent did not register the Infringing Domain Names in good faith. His actions immediately after registering them and his misrepresentations to WIPO make that abundantly clear. Again, Dent is a cybersquatter and has no cognizable claim against Lotto for RDNH.



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

### 3.3 Third Claim for Relief – Tortious Interference

Lotto filed a UDRP before WIPO, proving that it possessed worldwide mark rights in the LOTTO family of marks. It explained that the websites associated with the Infringing Domain Names both resolved to webpages offering to sell the Infringing Domain Names. And, it truthfully argued that Dent was not using the Infringing Domain Names for any *bona fide* purpose. Lotto did not tortuously interfere with Dent's contract with domain registrar GoDaddy, and GoDaddy did not breach its agreement with Dent. Dent has no cognizable claim for tortious interference, and this claim should be dismissed.

Pursuant to Arizona law, establishing a *prima facie* case of tortious interference with contract requires the plaintiff to show: (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of the contractual relationship or business expectancy; (3) the defendant's interference with that contractual relationship or business expectancy, causing a breach of the contract or a termination of the business expectancy; and (4) resulting damage to the plaintiff. *See Miller v. Hehlen*, 209 Ariz. 462, 471, 104 P.3d 193 (Ariz. App. 2005). Here, Dent argues that Lotto's allegations in the UDRP proceeding were not "complete and accurate" because Lotto relied upon its "asserted foreign rights for marks for clothing." (Complaint, at ¶ 44.) He then asserts that these misrepresentations caused GoDaddy to breach its registration agreement with Dent after the UDRP panel ordered GoDaddy to transfer the Infringing Domain Names to Lotto. (*See id.* at ¶ 45.) Both of these assertions are flatly wrong. Lotto did not interfere with Dent's contract with GoDaddy, and this claim for relief should be dismissed.

First, Lotto was entitled to rely upon its foreign trademark rights in the UDRP arbitration. The UDRP is an international arbitration program and does not rely upon the application of United States law. Its rules specifically state that the panel should decide

each complaint "in accordance with the [UDRP], these Rules [for Uniform Domain-Name Dispute-Resolution Policy] and ***any rules and principles of law that it deems applicable***."[3] (UDRP, at ¶ 15(a), attached hereto as **Exhibit R**) (emphasis added).

The panelist did not erroneously rely upon trademark law that did not emanate from the U.S. She was permitted to use any laws that she deemed applicable. The UDRP panel was permitted to rely upon Lotto's mark rights from any country, not just the United States (though Lotto's mark rights in the U.S. are roughly equivalent to its international rights as demonstrated above).

Moreover, while Dent claims that Lotto made "misrepresentations" in its UDRP complaint, he does not identify what those alleged misrepresentations were. (*See* Complaint, at ¶¶ 44-45.) He does not allege that Lotto misrepresented its trademark rights or that Lotto misrepresented the webpages that the Infringing Domain Names resolved to. The only alleged "misrepresentation" that Dent attempts to identify is an alleged "misrepresentation of Plaintiff's intent in registering" the Infringing Domain Names. (*See id.*, at ¶ 46.)

By definition, this was not a "misrepresentation." Lotto reviewed Dent's registration of the Infringing Domain Names and his subsequent use of the Infringing Domain Names and drew a conclusion as to Dent's intent. Dent was permitted to, and did, make a counter-argument regarding his alleged actual intent. (*See Lotto Sport Italia S.p.A. v. David Dent* at ¶ 5.B(e).) The panelist found Lotto's arguments more credible than Dent's. (*See id.*, at ¶ 6.C.) Accordingly, Lotto's representation was backed by credible evidence, and the

[3] While Dent does not attach the UDRP to his Complaint, his Complaint specifically relies upon it. (*See* Complaint, at ¶¶ 1, 9, 18, 20, 25.) In fact, Dent specifically alleges that the UDRP is what confers this Court with jurisdiction over this case. Thus, the UDRP rules are not only a matter of public record, they are also something upon which "the plaintiff's complaint necessarily relies." *Parrino*, 146 F.3d at 705-06. Thus, this Court can take judicial notice of the UDRP rules.



RANDAZZA | LEGAL GROUP

arbitrator agreed with Lotto's position. Meanwhile, Dent had every opportunity to disprove this allegation, but instead he made a material misrepresentation to the arbitrator, and even then this was not enough to disaffect the arbitrator of this conclusion.

Tellingly, the panel found Lotto to be more credible because Dent lied about when he registered the <lottoworks.com> Infringing Domain Name to make it appear as though his rights to the LOTTO WORKS marks preceded Lotto's.[4] (*See id.*) Further, the panel noted that the website associated with <lottoworks.com> contained numerous links to shoes (one of Lotto Sport's key products) and links to Lotto's competitor's websites. (*See id.*) The panel was additionally very skeptical of Dent's assertion that he had never heard of Lotto before he registered the Infringing Domain Names since Lotto was known worldwide and had been in operation for over 40 years. (*See id.*) None of these findings stemmed from any alleged "misrepresentation" by Lotto, who made no misrepresentations to the panel through the pendency of the UDRP proceeding.

Dent additionally argues that Lotto caused GoDaddy to breach its registration agreement with Dent. However, GoDaddy is not in breach of its registration agreement with Dent. Dent remains the registrant of the Infringing Domain Names and remains able to use those domains. (*See* WhoIs information for <lottoworks.com> and <lottostore.com>, dated 19 July 2017, attached hereto as **Exhibits P & Q**.) Dent will remain the registrant of the Infringing Domain Names until the conclusion of this case, when this Court rules upon whether he is permitted to maintain their registration despite Lotto's strong international mark rights.

Moreover, even if GoDaddy terminated its domain registration agreement with GoDaddy's Domain Name Registration Agreement specifically provides that GoDaddy

---

[4] Dent claimed he registered the <lottoworks.com> Infringing Domain Name in 1998 when he actually registered it in 2016.



RANDAZZA | LEGAL GROUP

shall comply with any decision rendered under the UDRP. (*See* GoDaddy Domain Name Registration Agreement,[5] attached hereto as **Exhibit S**, at ¶ 6.) Lotto's conduct did not tortuously interfere with Dent's relationship with GoDaddy. This claim must be dismissed.

## 4.0 CONCLUSION

For all of the reasons argued herein, Lotto requests that the Court dismiss the First and Third Claims for Relief against it pursuant to Fed. R. Civ. P. 12(b)(6). Neither the facts nor the law support Dent's assertion of RDNH and tortious interference claims. Moreover, Lotto possesses strong mark rights in both the LOTTO and LOTTO WORKS marks and is the proper registrant of the Infringing Domain Names.

Dated: July 19, 2017.

Respectfully submitted,

/s/ Ronald D. Green

Marc J. Randazza, AZ Bar No. 27861
Ronald D. Green, *pro hac vice*
Randazza Legal Group, PLLC
4035 S. El Capitan Way
Las Vegas, NV 89147

*Attorneys for Defendant,*
*Lotto Sport Italia S.p.A.*

[5] While Dent does not attach the GoDaddy Domain Name Registration Agreement to his Complaint, he relies upon it and quotes provisions contained in it. (*See* Complaint, at ¶ 20.) Thus, the Court may take judicial notice of the Agreement.



RANDAZZA | LEGAL GROUP

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 19, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee,
Randazza Legal Group, PLLC

RANDAZZA | LEGAL GROUP