John Berryhill, Ph.d. Esq.(*pro hac vice*)
204 East Chester Pike
First Floor, Suite 3
Ridley Park, PA 19078
+1.610.565.5601
+1.267.386.8115 fax
john@johnberryhill.com

Sean Kealii Enos (#023634)
Jeffrey W. Johnson (#024435)
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Telephone: (480) 655-0073
Facsimile: (480) 655-9536
kenos@IPlawUSA.com
jjohnson@IPlawUSA.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Dent, an Individual,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>Lotto Sport Italia S.p.A, an Italian Corporation,<br><br>　　　　　　Defendant. | Case No. CV 17-651-PHX-ROS<br><br>**RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

　　　　Plaintiff David Dent ("Dent" or "Plaintiff") hereby submits its Response to Defendant's Motion to Dismiss ("Response"). This Response is based on the following memorandum of points and authorities, the papers and pleadings on file in this action, and any oral argument permitted by this court.

## I.   INTRODUCTION

Plaintiff David Dent hereby respectfully asks this Court to deny Defendant's Motion to Dismiss for the reasons outlined below. Defendant's Motion omits and/or ignores facts plead in Plaintiff's complaint, introduces voluminous extrinsic evidence, mischaracterizes the facts and the law in order reach Defendant's desired conclusion with respect to the challenged claims, and advances a number of contentious, conclusory and inflammatory allegations for sheer prejudicial effect.  Based on a proper reading of the facts in the record, the challenged claims meet the standards necessary to survive a challenge under 12(b)(6), and should not be dismissed.  In the alternative, if this court finds that dismissal is warranted, Plaintiff requests that dismissal be without prejudice and that Plaintiff be given leave to amend.

## II.   FACTUAL BACKGROUND

1.   This Proceeding arises as a consequence of a proceeding under the Uniform Domain-Name Dispute Policy (UDRP) initiated by the Defendant.  The UDRP is a trademark dispute policy contractually incident to registration of internet domain names, often colloquially referred to as "web addresses".

2.   In this instance two domain names (lottostore.com and lottoworks.com) are registered under the ".com" domain under a contract between Plaintiff and domain registrar GoDaddy LLC of Scottsdale, Arizona. (Complaint, ¶¶ 16-17).

3.   On or about December 14, 2016, Defendant filed a complaint under the UDRP (the "UDRP Complaint"), seeking an order requiringGoDaddy LLC to transfer the Plaintiff's domain names to the Defendant.  (Complaint, ¶ 19).

4.   Plaintiff Dent is a co-founder, majority owner and principal of Trimark Ltd., a Gibralter corporation engaged in development and licensing of software and services for online gambling operations.  (Complaint, ¶ 10).

5. Plaintiff has been involved in the development and licensing of software relevant to the conduct of lottery, bingo and casino games for over ten years prior to this action. (Complaint, ¶10).

6. In 2016, Plaintiff decided to continue the development of his operations into providing direct online lottery gambling services to the public. (Complaint, ¶ 11).

7. Pursuant to the decision to expand into direct lottery gambling, Plaintiff expended substantial resources for software and user interface development, other operation preparation and planning, and in addition sought domain names for the expanded services. (Complaint, ¶ 12).

8. The term "lotto" is generic in relation to gambling and software services long provided by Plaintiff and for the services Plaintiff was preparing to launch. (Complaint, ¶¶ 13-14).

9. The USPTO has recognized that "lotto" is generic in connection with services essentially identical to Plaintiff's services, and has required disclaimers of exclusive rights in the word "lotto" for registrations in relation to gaming services in a large number of marks registered and/or pending registration. (Complaint, ¶ 15).

10. The two domain names purchased by Plaintiff are directly descriptive of Plaintiff's business. (Complaint, ¶ 16).

11. Plaintiff does not compete in any way with Defendant. (Complaint, ¶ 19).

12. Plaintiff does not and (given the nature of the products) could not utilize the domain names in a way that might infringe on Defendant's rights. (Complaint, ¶ 19).

13. In the UDRP proceeding, Defendant represented itself to be an "Italian clothing company." (Complaint, ¶ 21).

14. Defendant alleged that the fact that Plaintiff had not immediately deployed websites for the domain names was demonstrative of "bad faith" intent predicated on Defendant's asserted foreign trademark claims. (Complaint, ¶ 22).

15. Plaintiff had never heard of Defendant prior to notice of the UDRP filing. (Complaint, ¶ 23).

16. As a result of the UDRP complaint, GoDaddy LLC disabled Plaintiff's access to and control of the Domain Names. (Complaint, ¶ 23).

17. Within days after assuming control of the lottoworks.com domain, Plaintiff attempted to de-activate the domain name from directing to the "parking" website to which the previous registrant had directed the domain, but was unable to do so because GoDaddy had locked the domain as a result of the UDRP complaint. (Complaint, ¶ 23).

18. Plaintiff has been unable to exercise control of the domain as a result of Defendant's actions. (Complaint, ¶ 23).

19. On information and belief, Defendant possesses no common law trade or service mark rights and no rights under the Lanham Act in connection with the conduct of lotto gaming operations. (Complaint, ¶ 26).

20. Plaintiff does not manufacture or sell clothing of any kind. (Complaint, ¶ 27).

### III.     LAW AND ARGUMENT

A claim that fails to state a claim upon which relief can be granted may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff. The factual allegations are generally assumed to be true, but this does not include legal conclusions cast as factual allegations. *See, e.g., W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Furthermore, "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of the claim that would entitle the plaintiff to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). Generally, the court is limited to the allegations contained in the complaint, with certain exceptions. Defendant argues that Plaintiff's claims for Fraud in the UDRP, Reverse Domain Name Hijacking, and Tortious Interference should be dismissed for failure to state a claim under 12(b)(6). For the reasons set forth below, Defendant's motion should be denied.

In addition, it appears that Defendant desires this Court to merely endorse the UDRP decision or review it for error, as if this proceeding were some sort of "UDRP appeal." However, it is important to recognize that United States courts uniformly accord UDRP decisions no deference whatsover in actions of this type. *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelon*a, 330 F.3d 617, 626 (4th Cir.2003):

"In sum, we conclude that we have jurisdiction over this dispute brought under the ACPA and the Lanham Act. Moreover, we give the decision of the WIPO panelist no deference in deciding this action under § 1114(2)(D)(v). *See Dluhos v. Strasberg,* 321 F.3d 365, 373–74 (3d Cir.2003) (holding that 15 U.S.C. § 1114(2)(D)(v) requires the federal court to approach the issues raised in an action brought under that provision *de novo* rather than to apply the deferential review appropriate to actions governed by the Federal Arbitration Act); *Sallen v. Corinthians Licenciamentos LTDA,* 273 F.3d 14, 28 (1st Cir.2001) (explaining that "a federal court's interpretation of the ACPA supplants a WIPO panel's interpretation of the UDRP"). **Thus, for our purposes, the WIPO panelist's decision is relevant only to serve as the reason for Bcom, Inc.'s bringing an action under § 1114(2)(D)(v) to reverse the WIPO panelist's decision."**
(Emphasis Added). In this instance, the UDRP decision serves as a justification for Plaintiff bringing this action, and nothing more. Defendant's attempt to leverage the UDRP decision beyond this is not proper, and should be accorded no weight.

- 5 -

### a. 15 U.S.C. § 1114(2)(D)(iv) (Fraud in the UDRP)

As alleged in the Complaint, "Knowing its allegations were not 'complete and accurate', Defendant certified otherwise in its UDRP complaint, and claimed that the Plaintiff had 'registered and used [the domain names] in bad faith/ relative to the Defendant's asserted foreign rights for marks for clothing." (Complaint, ¶ 44)  In the UDRP Complaint, Defendant misrepresented, and continues to misrepresent, that Defendant has  rights in alleged marks relevant to Plaintiff's registration of the domain name in this District, and that Plaintiff's registration of the domain name was somehow premised on these rights.

The Defendant, admitting in the UDRP Complaint to the jurisdiction of this Court, knows it owns no cognizable or enforceable right inthe phrase "LOTTO WORKS" or "LOTTO STORE" in relation to the Plaintiff's domain name registrations.   Defendant continues to make such knowingly false statements before this Court, claiming to have "numerous registrations with the United States Patent and Trademark Office (the "USPTO") for the LOTTO family of marks, including but not limited to:

[...]

h. LOTTO WORKS"
Defendant knows this is a false statement, consistent with the claim made in the UDRP Complaint in relation to having enforceable rights against Plaintiff in alleged mark.  The USPTO has expressly refused registration of the Defendant's application to register a claimed "LOTTO WORKS" mark under the Lanham Act.  The USPTO's refusal of the application, claimed by the Defendants as among its "numerous registrations" is attached as Exhibit A.  The Defendant's similar claims in the UDRP Complaint, to the effect of

having some sort of "international" rights in the term "LOTTO WORKS" is thus willfully false by omission relative to the actual status of the claimed "rights" and, in particular, in the governing jurisdiction to which Complainant admitted upon filing the UDRP Complaint.  While the Defendant clearly would like this Court to accept the conclusions reached in the UDRP proceeding based on such transparently false allegations, it is beyond dispute that the Defendant's "LOTTO WORKS" registration application stands expressly refused by the USPTO.

     Plaintiff has been involved in the development and licensing of software relevant to the conduct of lottery, bingo and casino games for over ten years prior to this action.  Plaintiff's alleged engagement in this field is likewise a matter of public record of which the Court may take judicial notice.  *See, e.g. Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007)*; Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *Dahon N. Am., Inc. v. Hon,* No. 2:11-CV-05835-ODW, 2012 WL 1413681, at *8 (C.D. Cal. Apr. 24, 2012).  More specifically, Plaintiff is the owner of US Registered Trademark No. 3,656,416 in TRIMARK® issued in 2009 (Exhibit B), for inter alia, "Lottery services; Lottery services provided over a global computer network; On-line lottery services; Administration of lotteries for others."  Plaintiff is likewise an inventor of International Patent Application No. WO2006057624 for "Online Betting Systems" published in 2006 (Exhibit C).  Defendant's conclusory allegation that "Plaintiff is a cybersquatter" appears to confuse the sufficiency of an allegation with mere denial of it.  The Complaint sufficiently alleges Plaintiff's engagement in the field of lotto games consistent with these public records noted above.  Defendant's mere denial thereof and assertion that "Plaintiff is a cybersquatter" does not render insufficient the allegations of the Complaint in relation to Plaintiff's relevant

services and course of trade (and the fact that they are unrelated to Defendant's shoe business).

Furthermore, Defendant knew, when it alleged Plaintiff to have registered the domain names in "bad faith" as alleged in the Complaint, that Defendant owns no cognizable or enforceable rights in any trade or service mark relating to lottery services, online gaming generally, or any other field of business in which the Plaintiff engages and for which the Plaintiff acquired the domain names.  The Defendant's false statement of registration in "bad faith" is compounded by Defendant's misrepresentation of its alleged marks in the UDRP Complaint, and before this Court.  Defendant also ventures far beyond the allegations of the Complaint, referring to various US Trademark Registrations for various goods that the Complaint states are not related to Plaintiff's goods and services, to wit:

1.  US TM Reg. No. 1023806 for the logo: ⊘lotto
    for boots and shoes.
2.  US TM Reg. No. 1378169 for the logo: ◇
    which Defendant knowingly and falsely characterizes as "Lotto design mark" despite the complete absence of anything resembling "Lotto" therein, for clothing and sporting goods.
3.  US TM Reg. No. 1379243 for the logo: *lotto*
    for clothing and gymnastic equipment.
4.  US TM Reg. No. 2514566 for the logo: ⊘ lotto
    for toiletries, eyeglasses, and office supplies.
5.  US TM Reg. No. 4,148,339 for the logo: ⊘ lotto
    for leather goods, clothing and other items recited therein.

1 Likewise, Defendant's non-figurative "LOTTO" mark (U.S. TM Reg. No. 2347644
2 for clothing); and Defendant's non-figurative "LOTTO LEGENDA" mark (U.S. TM Reg.
3 No. 3864425 for leather and imitation leather goods, are entirely unrelated to the
4 purposes for which Plaintiff acquired the domain names, and not facially similar to
5 "LOTTOWORKS.COM" or "LOTTOSTORE.COM".  In addition, Defendant falsely
6 claims "LOTTO LEGENDA" to be registered for "games and playthings, and retail and
7 wholesale store services" despite the Defendant having expressly deleted such goods
8 from the registration.   As can be seen in Exhibit D hereto, the Defendant submitted a
9 deletion of the majority of goods from that registration on October 18, 2016, including
10 deletion of the entire class of such "retail and wholesale store services".  These deletions,
11 which the Defendant remarkably claims otherwise to this Court, are noted within the
12 brackets and by the notation "(Cancelled)" in the USPTO record of the Defendant's
13 registration as shown in Exhibit D hereto.
14 Plaintiff's claims under 15 USC 1114 are premised on whether the Defendant has
15 made false statements in a claim arising under the dispute policy of the GoDaddy.com
16 domain registration contract transacted in this District.  Whether the Defendant's alleged
17 figurative or other marks, in connection with goods <u>wholly unrelated to the conduct of</u>
18 <u>online lottery gambling,</u> are at all  relevant to the domain names
19 "LOTTOWORKS.COM" or "LOTTOSTORE.COM" (registered in connection with
20 Plaintiff's online lottery enterprise), such that the Defendant's allegation that Plaintiff
21 registered these domain names in "bad faith" in relation to them is anything other than a
22 false statement as alleged in the Complaint, is well beyond the purview of a motion under
23 12(b)(6). The Complaint alleges that Defendant falsely accused Plaintiff of having
24 registered the domain names in bad faith in relation to claimed rights the Defendant
25 continues to misrepresent, and that such false statements render the Defendant's UDRP

allegation of registration in "bad faith" in relation the Defendant's domain registrations in this District to have been knowingly false when made.  Defendant's claim in the UDRP proceeding that an accomplished professional in the field of online gaming systems registered these lotto-formative domain names in "bad faith" out of some sort of animus relative to an Italian shoe manufacturer is not only wholly inconsistent with the Plaintiff's established reputation in the field of online lottery games, it is simply false as alleged in the Complaint, which Plaintiff intends to prove on an appropriately-developed record.

Furthermore, Defendant's arguments to the effect that the UDRP panelist could apply any law to the dispute, or that the UDRP panelist found the Defendant's claims "credible" is simply not relevant to whether the Defendant's claims were false under the governing law of this District in which the contracts were made.

    **b.**  **14 U.S.C. § 1114(2)(D)(v) (Reverse Domain Name Hijacking)**

The elements of Reverse Domain Name Hijacking are that Plaintiff (1) registered a domain name; (2) that was "suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II)"; (3) "that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action; and (4) "that [his] registration or use of the domain name is not unlawful." *AIRFX.com v. AirFX LLC,* No. CV 11-01064-PHX-FJM, 2012 WL 3638721, at *6 (D. Ariz. Aug. 24, 2012).  (*quoting Ricks*, 727 F. Supp. 2d at 959.) Defendant admits that elements 1-3 are met, leaving element 4 (that Plaintiff's registration or use of the domain name is not unlawful) as the only item allegedly in question.  However, the relevant facts plead in the complaint (stated above), taken as true, clearly meet the 4th element.

Plaintiff is (and has been for at least ten years) involved in the gaming business (software and services for online gaming).  Plaintiff has expended substantial resources

for software and user interface development and other operation preparation and planning in support of expansion efforts into online lottery gambling.  In support of his online lottery gambling efforts, Plaintiff purchased two domains containing the name "lotto", a term that is generic in relation to gambling and software services.  The names are descriptive of Plaintiff's business.

On the other hand, Defendant is an Italian clothing company, Plaintiff in no way competes with Defendant (Plaintiff does not make or sell clothing of any kind), and Plaintiff was not even aware of Defendant's existence prior to Defendant filing a UDRP action.  Additionally, Defendant's own actions (UDRP filing) have hindered Plaintiff's efforts to make changes to the previous registrant's settings for the domains, settings for which Defendant now blames Plaintiff.  Finally, Defendant possesses no common law trade or service mark rights and no rights under the Lanham Act in connection with the conduct of lotto gaming operations.

These facts were all pled in the Complaint, and taken as true, as they must be, clearly demonstrate that Plaintiff's registration and use of the domains was not unlawful or in bad faith.  Rather, Plaintiff's registration and use of these domains were in support of online gaming-related business in which Plaintiff has been engaged for over 10 years.  The names chosen ("lotto") are completely consistent with gaming businesses (indeed, as acknowledged by the USPTO, are generic with respect to these businesses), and in no way infringe any purported right this Italian Defendant claims with respect to its clothing business.  Indeed, the domain names are directly descriptive of the purposes for which the Plaintiff registered them - i.e. for use as in connection with the back-end "works" of a lotto operation and for a "store" at which lotto entries may be bought.  In connection with the Plaintiff's reasonable belief in relation to "lotto store", Defendant simply expresses disbelief of Plaintiff's intent, yet it has been found as such as noted in, for example, US

TM Reg. No. 2930997 for "PRIMM VALLEY LOTTO STORE" for "lottery services" which bears the disclaimer of the descriptive matter "LOTTO STORE" as required by the USPTO.  The standard for dismissal is that "Plaintiff can prove **no** set of facts in support of his claims . . ." (emphasis added).  Plaintiff has provided **many** such facts and looks forward to providing more at trial.

    **c.**    **Tortious Interference**

The Defendant's allegation in the UDRP Complaint of "bad faith" in Plaintiff having acquired the domain names for any purpose relating to the Defendant's claim of rights in "LOTTO WORKS" or "LOTTO STORE" was deliberately and willfully made for the purpose of depriving the Plaintiff of the benefits of the respective registration contracts and securing them to itself.  The Defendant filed its UDRP Complaint for the purpose of denying Plaintiff the benefits of Plaintiff's lawful registration contract with GoDaddy.com in this District by, inter alia advancing the false statement in the UDRP that Plaintiff registered the subject domain names in "bad faith" for the purpose of exploiting non-existent rights claimed by the Defendant.  Consequently, Defendant has tortiously interfered with Plaintiff's contractual rights.

    **d.**    **Defendant's Additional Allegations**

Defendant has made a number of conclusory, contentious and inflammatory assertions concerning the Plaintiff which are not germane to the legal sufficiency of the allegations of the Complaint under 12(b)(6).  While these contentions are best addressed at the appropriate procedural juncture, they appear to be presented for mere prejudicial effect, compelling Plaintiff to briefly address, in particular, Defendant's repeated cry of "Dent lied" in relation to Plaintiff's interest in the domain names alleged in the UDRP proceeding; and Defendant's accusations of other Plaintiff actions.

Plaintiff acquired the domain names by purchase from a prior registrant against whom the Defendant had made no claim despite longstanding registration of the domain names. As the Ninth Circuit has observed in relation to transfers of a domain name from one party to another in *GoPets Ltd. v. Hise,* 657 F.3d 1024, 1031–32 (9th Cir. 2011): "Looking at ACPA in light of traditional property law, however, we conclude that Congress meant 'registration' to refer only to the initial registration. It is undisputed that Edward Hise could have retained all of his rights to gopets.com indefinitely if he had maintained the registration of the domain name in his own name. We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner. The general rule is that a property owner may sell all of the rights he holds in property. GoPets Ltd.'s proposed rule would make rights to many domain names effectively inalienable, whether the alienation is by gift, inheritance, sale, or other form of transfer. Nothing in the text or structure of the statute indicates that Congress intended that rights in domain names should be inalienable. We therefore hold that Digital Overture's re-registration of gopets.com was not a registration within the meaning of § 1125(d)(1). Because Edward Hise registered gopets.com in 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-registration and continued ownership of gopets.com does not violate § 1125(d)(1)."

Plaintiff was represented in the UDRP proceeding by counsel who stated that Plaintiff's priority in the domain names, under the law of this Circuit, lay in the chain of ownership of the Plaintiff's predecessor-in-interest, such that the Plaintiff may rightfully claim to have stood in their shoes in having registered them.  Defendant notes that a UDRP panelist might apply "any laws" to a UDRP proceeding.  That is among the reasons why they are given no deference by U.S. courts.

Repeating "Dent lied" does not change the fact that (a) the domain names were locked by GoDaddy.com upon Defendant's allegations made under the dispute provisions of the GoDaddy.com registration contract which is governed by the law of this District and this Circuit, (b) the statements in Plaintiff's UDRP Response were certified to be "warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument", (c) the Plaintiff's UDRP counsel reasonably believed the law of this District to be paramount among the "any law" a UDRP panelist might apply.  A difference of opinion on what law should have been applied in relation to Plaintiff's priority in the domain names, and hence Plaintiff's statement in the UDRP Response to the effect that Plaintiff stands in the shoes of its predecessors-in-interest in relation to the original domain registration dates, does not amount to a "lie".

Ultimately, Plaintiff does not believe that reliance on *Gopets* is necessary to the resolution of this action, especially in view of the purposes for which Plaintiff chose to purchase the domain names from its predecessors.  The relevant registrar action - disabling Plaintiff's ability to control the domain names - was made upon the Defendant having filed the UDRP Complaint.  The question in this Action is whether the Plaintiff's registration of these domain names was lawful under the law of this District, and whether the Defendant's triggering UDRP complaint was premised on the false statement that Plaintiff had registered the domain names in bad faith in relation to alleged trademarks which the Defendant continues to misrepresent.  This Action arises under the Lanham Act for an independent determination of the Plaintiff's rights in relation to the domain names.   Accordingly, the Defendant's apparent desire for this court to review the UDRP decision as if this were some sort of "UDRP appeal" has no place in this Action.

Likewise, the Defendant appears to believe that merely denying or claiming to disprove allegations of the Complaint discharges the Defendant's burden under 12(b)(6).

The Complaint alleges Plaintiff purchased the domain names and took no action to deploy a website of any kind (Complaint, ¶¶ 17 and 23).  Defendant repeatedly and falsely claims here, as in the UDRP Complaint, that upon purchasing the domain names, the Plaintiff "immediately attached them to websites, which contained links to Lotto's competitors and offered the Infringing Domain Names for sale."  This contention is not only beyond the scope of 12(b)(6), but is demonstrably untrue.  Plaintiff notes that Defendant's Exhibit B includes an unauthenticated copy of a domain name registration data print-out from the website DomainTools.com, an independent domain name data provider, presumably as a public record of which the Court may take notice.  While it was observed in *Randazza v. Cox*, No. 2:12-CV-2040-JAD-PAL, 2014 WL 1407378, at *2 (D. Nev. Apr. 10, 2014) that "Few courts have considered how a website print-out or blog posting may be authenticated..." Defendant chose to include them, and consequently, to the extent this Court considers them, this Court should also consider Plaintiff's exhibits below.  See, e.g., Exhibit E which is a DomainTools.com WHOIS history report showing the status of the domain name lottoworks.com as of the "Record Date:" of 28 October 2016.  As can be seen therein near the bottom of the last page, the "name servers" for the domain name are set to "NS1.PARKINGCREW.NET" and "NS2.PARKINGCREW.NET".   Turning to the DomainTools.com record of the domain name in Exhibit E following its purchase by Plaintiff as of 10 January 2017, the "name servers" remain set to the identical addresses.  Likewise, Exhibit E includes the pre-purchase DomainTools.com WHOIS history records for lottostore.com dated 18 May 2016, and the post-purchase WHOIS record dated 13 October 2016, the name servers remained "NSI.SEDOPARKING.COM" and "NS2.SEDOPARKING.COM".  Both ParkingCrew.net and SedoParking.com are so-called "domain parking" companies which offer search advertising websites and facilitate domain name sales inquiries.  The

Plaintiff, upon purchasing the domain names, merely left the name servers as they had been, since the Plaintiff had not yet developed websites specifically for its newly-purchased domain names and the Plaintiff did not make changes to the technical settings for the domain names.

Shortly after Plaintiff purchasing these domain names from their prior registrants and began making preparations for their use, the domain names were removed from Plaintiff's control by the registrar, GoDaddy.com, as a consequence of the Defendant's filing of a UDRP Complaint.  The Plaintiff was disabled from changing the nameservers for the domain names, which are servers that tell internet traffic "where to find" email, web pages, and other internet services facilitated by domain names, and as the Plaintiff had not yet changed them from the settings established by the prior registrants, the domain names continued to operate in a manner which the Plaintiff had never configured them to do, and had lost any technical control of them.   These domain names thus continued to display "search suggestions" for what are known as pay-per-click advertisements entirely generated by a "domain parking" company with whom the Plaintiff has no relationship or control whatsoever, and the lock condition imposed by the registrar had continued that state of affairs.

Knowing full well that the Plaintiff is unable to control the domain names as a consequence of the Defendant's own UDRP filing, Defendant falsely alleges, and continues to falsely allege, that the Plaintiff has configured the domain names to operate in a manner which, in fact, remains a consequence of the Defendant's own actions in causing the registrar to "lock" the names beyond control of Plaintiff.  As alleged in the Complaint, Plaintiff purchased the domain names and did not immediately launch websites for them.  Defendant's claims to the contrary do not change the clear allegations of the Complaint in that regard, nor do they change the underlying facts. It is precisely

these and other false statements of the Defendant, alleged generally in the Complaint in relation to the Defendant's claim of "bad faith" against the Plaintiff, upon which the registrar took the action of disabling Plaintiff's ability to control the domain names, which has brought the parties here.

## IV.  CONCLUSION

For at least the above-detailed reasons, Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety.  In the event that this court determines that dismissal of any of the claims is appropriate, Plaintiff requests that such dismissal be without prejudice, and that Plaintiff be given leave to amend to cure any defects.  "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. '[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (citation and quotation omitted).

DATED this 2nd day of August, 2017.

                SCHMEISER, OLSEN & WATTS LLP

                By:
                */Jeffrey W. Johnson /*

                Sean K. Enos
                Jeffrey W. Johnson
                SCHMEISER, OLSEN & WATTS, LLP
                18 E. University Drive, Suite 101
                Mesa, Arizona 85201
                */John Berryhill/*
                John Berryhill, Ph.d. Esq.(*pro hac vice*)
                204 East Chester Pike
                First Floor, Suite 3
                Ridley Park, PA 19078

                Attorneys for Plaintiff

Case No. CV-17-651-PHX-ROS

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

**Respectfully Submitted**

/**s**/ *Steven Adams*_____
Paralegal,
Schmeiser Olsen & Watts LLP