# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Dent,<br><br>           Plaintiff,<br><br>v.<br><br>Lotto Sport Italia S.p.A.,<br><br>           Defendant. | No. CV-17-00651-PHX-ROS<br><br>**ORDER** |

Plaintiff registered two domain names, lottoworks.com and lottostore.com, allegedly in connection with his online gaming business. Plaintiff then sued Defendant Lotto Sport, ("Lotto"), an Italian clothing company, when Defendant allegedly prevented Plaintiff from accessing or utilizing these domain names by misrepresenting that they infringed on Lotto's trademarks. Defendant filed a motion to dismiss Plaintiff's claims for reverse domain name hijacking and fraud in the domain dispute proceeding (Count One) and tortious interference (Count Three). Since Plaintiff's allegations state a claim for reverse domain name hijacking, but not for fraud in the domain dispute proceeding or for tortious interference, Defendant's motion to dismiss will be granted in part and denied in part.

## BACKGROUND

Plaintiff's complaint alleges the following: Plaintiff has been involved in the gaming industry for ten years. Plaintiff's work includes developing and licensing software regarding lottery, bingo, and casino games. Plaintiff decided to expand into

direct online gambling, and developed a business model intended to bring direct online lottery gambling services to the public in jurisdictions where gambling is legal. To this end, in late 2016, Plaintiff purchased the domain names lottoworks.com and lottostore.com. Plaintiff expected to launch lottoworks.com as a website for his company operations and lottostore.com as his direct lotto game storefront. Together, the domain names cost Plaintiff over $11,000. Plaintiff also expended substantial resources planning operations and developing software and user interfaces for these websites. While Plaintiff prepared to launch these as websites, Plaintiff registered the two domain names with GoDaddy LLC ("GoDaddy"), an internet domain name registrar. In doing so, Plaintiff entered into a contract with GoDaddy.

Defendant Lotto is an Italian clothing company owning various trademarks regarding the word "Lotto." Shortly after Plaintiff's 2016 domain name purchases, Defendant discovered Plaintiff's domain names and filed a complaint under the Uniform Domain Name Dispute Resolution Policy ("UDRP") with the World Intellectual Property Organization ("WPO"). This administrative proceeding allows entities to challenge ownership of domain names and, upon prevailing, obtain ownership and control over the domain names. Plaintiff alleges Defendant's UDRP complaint misrepresented Plaintiff's intent in registering lottoworks.com and lottostore.com. In particular, Plaintiff alleges Defendant's UDRP complaint alleged Plaintiff registered and used the domain names in "bad faith" in part because, after purchasing them, Plaintiff did not immediately begin using them for his gambling business. After the UDRP complaint was filed, it was sent to GoDaddy and, upon receiving it, GoDaddy prevented Plaintiff from accessing or exercising any control over lottoworks.com and lottostore.com. Plaintiff alleges Defendant filed its UDRP complaint intending to deprive Plaintiff of the benefit of Plaintiff's registration contracts with GoDaddy and to transfer control of Plaintiff's domain names to Defendant. Plaintiff never utilized lottoworks.com or lottostore.com in such a way that would infringe on Defendant's rights, and was unaware of Defendant's brand when he purchased and accessed the domain names.

Based on these alleged events, Plaintiff believes Defendant engaged in reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(iv)-(v) (Count One) and tortious interference (Count Three). (Doc. 1). Plaintiff also seeks a declaratory judgment demonstrating he is not violating the Lanham Act (Count Two). (*Id.*). Defendant moved to dismiss Count One for reverse domain name hijacking and Count Three for tortious interference but concedes Count Two for declaratory judgment must proceed. (Doc. 11).

## ANALYSIS

To survive a motion to dismiss for failure to state a claim, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. of Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (The complaint must contain "enough facts to state a claim to relief that is plausible on its face."). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). When evaluating a motion to dismiss, a court accepts all factual allegations as true and draws all reasonable inferences therefrom, but need not accept legal conclusions. *See Twombly*, 550 U.S. at 555; *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2009); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296–98 (9th Cir. 1998).

**I.   Count One:**

Plaintiff's first count is for reverse domain name hijacking. However, in this count, Plaintiff alleges Defendant violated both 15 U.S.C. § 1114(2)(D)(iv) and (v). These are actually two separate violations: one for fraud in the domain dispute proceeding, (15 U.S.C. § 1114(2)(D)(iv)), and a second for reverse domain name hijacking, (15 U.S.C. § 1114(2)(D)(v)). *See, e.g.*, *Ricks v. BMEzine.com, LLC*, 727 F.

Supp. 2d 936 (D. Nev. 2010).

A party commits fraud in the domain dispute proceeding, (15 U.S.C. § 1114(2)(D)(iv)), by making "a knowing and material misrepresentation . . . that a domain name is identical to, confusingly similar to, or dilutive of a mark" which causes a registration authority to transfer, disable, or cancel a domain name. *See Ricks*, 727 F. Supp. 2d at 966.  Thus, for Plaintiff to state a claim, he would need to allege (1) Defendant made a knowing and material misrepresentation that a domain name is identical to, confusingly similar to, or dilutive of a mark and (2) this misrepresentation caused a registration authority to transfer, disable, or cancel a domain name.  Yet, the only misrepresentation Plaintiff alleges is that Defendant misrepresented Plaintiff's intent in establishing the domain name, and Plaintiff only alleges this misrepresentation regarding Plaintiff's separate tortious interference claim.  (Doc. 1, ¶ 44).  Plaintiff fails to allege any facts suggesting Defendant knowingly and materially misrepresented Plaintiff's domain name is identical, confusingly similar to, or dilutive of Defendant's mark. *See Ricks*, 727 F. Supp. 2d at 966 ("The plain language of § 1114(2)(D)(iv) covers . . . only misrepresentations about whether the domain name is identical to, confusingly similar to, or dilutive of a mark.").  Thus, Plaintiff's allegations are insufficient to state a claim for relief for fraud in the domain dispute proceeding, and will be dismissed.

Regarding Plaintiff's reverse domain name hijacking claim, (14 U.S.C. § 1114(2)(D)(v)), Plaintiff must demonstrate: (1) Plaintiff registered a domain name; (2) the domain name was suspended, disabled, or transferred under a policy implemented by a domain name registrar; (3) Defendant had notice of the action; and (4) Plaintiff's "registration or use of the domain name [was] not unlawful" under this chapter. *AIRFX.com v. AirFX LLC,* No. CV 11-01064-PHX-FJM, 2012 WL 3638721, at *6 (D. Ariz. Aug. 24, 2012) (quoting *Ricks*, 727 F. Supp. 2d at 959).  The parties agree Plaintiff satisfies the first three requirements.  Thus, the only question is whether Plaintiff's complaint alleges Plaintiff's registration or use of the domain names lottoworks.com and lottostore.com was not unlawful.

1  Defendant points to disputed facts, evidence not relied upon in the complaint, and
2 evidence not subject to judicial notice in an effort to demonstrate Plaintiff's purpose was
3 unlawful.  These materials will not be considered.  *See Twombly*, 550 U.S. at 555 (When
4 evaluating a motion to dismiss, a court accepts all plaintiff's factual allegations as true);
5 *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (explaining that, when
6 evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court may
7 not consider any material beyond the pleadings, unless (1) the material is attached to the
8 complaint, (2) the complaint necessarily relies upon it and the document's authenticity is
9 not contested, or (3) judicial notice is appropriate).

10  Defendant also argues the WIPO already ruled in Defendant's favor and
11 concluded Plaintiff's use was unlawful.  Even if judicial notice of the WIPO's decision
12 were proper, as Defendant argues, the WIPO's conclusions are afforded no deference.
13 *See, e.g.*, *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d
14 617, 626 (4th Cir. 2003) ("[W]e give the decision of the WIPO panelist no deference.");
15 *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2011 WL 5007919, at *4 (D.
16 Ariz. Oct. 20, 2011) ("[T]he findings of the UDRP panel . . . are not binding on this
17 court); *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1034 (C.D. Cal. 2010)
18 ("[T]he findings of the WIPO panel are entitled to no deference here.").  Thus, the
19 WIPO's decision does not establish Plaintiff's use was unlawful.

20  Turning to Plaintiff's complaint, it is clear Plaintiff has adequately pled his use or
21 registration of lottoworks.com and lottostore.com was not unlawful.  To allege his
22 conduct was "not unlawful," Plaintiff would need to allege either (1) he did not register,
23 traffic, or use a domain name that is identical or confusingly similar to a distinctive mark,
24 or (2) he did not have a bad faith intent to profit from that mark.  15 U.S.C.A. §
25 1125(d)(1)(A).  Plaintiff alleges he has been involved in the gaming industry for ten
26 years, including developing and licensing software regarding lottery, bingo, and casino
27 games.  Plaintiff alleges he decided to expand into direct online gambling, and, in late
28 2016, purchased the domain names lottoworks.com and lottostore.com for that purpose.

- 5 -

1 Plaintiff alleges he expected to launch lottoworks.com as a website for his company
2 operations and lottostore.com as his direct lotto game storefront. And Plaintiff alleges he
3 did not utilize the domain names in such a way that would infringe on Defendant's rights,
4 was unaware of Defendant's brand when he purchased and accessed the domain names,
5 and does not manufacture, produce, or sell clothing of any kind. Finally, Plaintiff alleges
6 the term "lotto" is a generic word describing gambling services.

Plaintiff's allegations, taken as true, are sufficient to allege Plaintiff's use of the domain names was not unlawful. *See, e.g.*, *AIRFX.com*, 2011 WL 5007919, at *4 (concluding plaintiffs alleged their domain name use was lawful in part because plaintiff, an indoor skydiving enthusiast, alleged his AIRFX website name was chosen to reflect his wind tunnel business, not in bad faith to use or infringe on defendant's AIRFX trademark or interfere with defendant's motorcycle and vehicle part business); *Domain Vault LLC v. Bush*, No. 14-CV-2621-WJM-CBS, 2015 WL 1598099, at *10 (D. Colo. Apr. 8, 2015) (concluding that a plaintiff's alleged use was "not unlawful" because the plaintiff alleged the allegedly infringing term was generic); *see generally Ricks*, 727 F. Supp. 2d at 952 (citations omitted) (recognizing that "[c]ontext is critical to a distinctiveness analysis" such that a word may be generic in one context and distinctive in another). And since the Parties agree Plaintiff has also satisfied each other element of his reverse domain name hijacking claim, Plaintiff will be permitted to proceed on this claim.

**II.     Count Three:**

Plaintiff also asserted a count for tortious interference. There are two types of tortious interference claims: tortious interference with a contract and tortious interference with a business expectancy. Plaintiff does not identify which he is alleging, however "the elements are virtually identical." *See also S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1047 n.41 (D. Ariz. 2002). Therefore, the Court will analyze the two types simultaneously.

Under Arizona law, a plaintiff must show: (1) the existence of a valid contractual

relationship or business expectancy; (2) the defendant's knowledge of the contractual relationship or business expectancy; (3) the defendant's improper interference with that contractual relationship or business expectancy, inducing or causing a breach or termination of the contract or the business expectancy; and (4) resulting damage to the plaintiff. *See Miller v. Hehlen*, 104 P.3d 193 (Ariz. Ct. App. 2005) (citation omitted); *see also Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc.*, 637 P.2d 733, 740 (Ariz. 1981). And to determine if a defendant's interference with a contractual relationship or business expectancy was "improper," courts may consider both the nature of the defendant's conduct and the defendant's motive. *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1040 (D. Ariz. 2001).

Taken as true, Plaintiff's allegations satisfy most, but not all, of these elements. Plaintiff alleges the existence of a contract with GoDaddy, and a business expectancy with the online public in jurisdictions where gambling is legal. This satisfies the first requirement. Plaintiff also alleges Defendant's actions were intended to deprive Plaintiff of the use of his domain names and transfer those domain names to Defendant. This is sufficient to show Defendant's interference with Plaintiff's contract or business expectancy was improperly motivated. Plaintiff also alleges that, as a result of Defendant's actions, Plaintiff cannot use lottoworks.com and lottostore.com in pursuit of his online gaming business. This is sufficient to demonstrate Defendant's actions terminated Plaintiff's business expectancy. And Plaintiff's allegations regarding his considerable financial and developmental expenditures, coupled with Plaintiff's inability to access or utilize his domain names, are sufficient to establish Plaintiff was damaged.

However, if Plaintiff is alleging Defendant tortiously interfered with Plaintiff's GoDaddy contract, Plaintiff fails to allege any facts suggesting Defendant knew of Plaintiff's contractual relationship with GoDaddy, or how GoDaddy breached its contract with Plaintiff. Conversely, if Plaintiff is alleging Defendant tortiously interfered with Plaintiff's business expectancy, Plaintiff fails to allege any facts suggesting Defendant knew of Plaintiff's business expectancy. For these reasons, Plaintiff's tortious

1 interference claim will be dismissed.

2 **III. Leave to Amend**

3 "In dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted). Here, many of the deficiencies identified above may be curable and Plaintiffs will be granted leave to amend.

Accordingly,

**IT IS ORDERED** Defendant's motion to dismiss, (Doc. 11), is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** if Plaintiff can cure the deficiencies identified above, Plaintiff shall file a First Amended Complaint no later than March 5, 2018.

Dated this 12th day of February, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge