Marc J. Randazza, AZ Bar No.: 27861
Ronald D. Green, *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Tel: 702-420-2001
ecf@randazza.com

*Attorneys for Defendant,*
*Lotto Sport Italia, S.p.A.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| David Dent, an individual,<br><br>    Plaintiff,<br><br>        vs.<br><br>Lotto Sport Italia, S.p.A.,<br>  an Italian Corporation,<br><br>    Defendant. | Case No. CV-17-651-PHX-DMF |

### DEFENDANT LOTTO SPORT ITALIA, S.P.A.'S MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF CONTENTS</u>

2  1.0   INTRODUCTION ....................................................................................1

3  2.0   LEGAL ARGUMENT ...........................................................................2

4     2.1   STANDARD OF REVIEW..................................................................2

5     2.2   DECLARATORY RELIEF (28 U.S.C. § 2201) ................................2

6        3.2.1   Dent Violated the Lanham Act ...........................................2

7           3.2.1.1   Lotto's Rights to Its Marks ...............................4

8           3.2.1.2   The Sleekcraft Factors ....................................5

9        3.2.2   Dent Violated The ACPA ....................................................7

10     2.3   REVERSE DOMAIN NAME HIJACKING (15 U.S.C. § 1114(2)(D)(V)) ..........10

11        3.3.1   Elements of Claim ..............................................................10

12        3.3.2   Dent's Registration Was Unlawful .....................................13

13        3.3.3   Available Remedies Under Subsection (v) ..........................13

14        3.2.3   Exceptionality of the Case ..................................................15

15  3.0   CONCLUSION ..................................................................................17

16

17

18

19

20

21

22

23

24

25

RANDAZZA | LEGAL GROUP

## TABLE OF AUTHORITIES

**CASES**

*Abercrombie & Finch Co. v. Moose Creek, Inc.*,
   486 F.3d 629 (9th Cir. 2007) ...........................................................................3

*Acad. Of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
   944 F.2d 1446 (9th Cir. 1991) ......................................................................3, 6

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) .......................................................................4, 6

*Asics Corp. v. Payless Shoe Source, Inc.*,
   2006 U.S. Dist. LEXIS 103078 (Aug. 23, 2006) ...........................................6

*Barcelona.com v. Excelentisimo Ayuntamiento de Barcelona*,
   330 F.3d 617 (4th Cir. 2003) .........................................................................11

*Black v. Irving Materials, Inc.*,
   2019 U.S. Dist. LEXIS 135882 (N.D. Cal. Aug. 10, 2019) ................... 11, 13

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ......................................................................5, 6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .........................................................................................2

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) .........................................................................4

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) .......................................................................................17

*Green Prods. Co. v. Independence Corn By-Prods. Co.*,
   992 F. Supp. 1070 (N.D. Iowa 1997)...............................................................3

*In re Jackson*,
   184 F.3d 1046 (9th Cir. 1999) .......................................................................13

*Inst. Of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
   725 F.3d 940 (9th Cir. 2013) .........................................................................15

*Interstellar Starship Services, Ltd. v. Epix, Inc.*, 3
   04 F3d 936 (9th Cir. 2002) ..........................................................................4, 5

RANDAZZA | LEGAL GROUP

*Jesinger v. Nev. Fed. Credit Union,*
  24 F.3d 1127 (9th Cir. 1994) ........................................................................2

*Jimenez v. Quarterman,*
  555 U.S. 113 (2009) ....................................................................................13

*K-Swiss, Inc. v. USA Aisiqi Shoes, Inc.,*
  291 F. Supp. 2d 1116 (C. D. Cal. 2003) .......................................................6

*MailPlanet.com, Inc. v. Lo Monaco Hogar, S.L.,*
  2007 U.S. Dist. LEXIS 105076 (S.D. Fl. Dec. 17, 2007)............................14

*Murray v. Cable Nat'l Broad Co.,*
  86 F.3d 858 (9th Cir. 1996) ..........................................................................3

*NextEngine Ventures, LLC v. Lastar, Inc.,*
  2015 U.S. Dist. LEXIS 169672 (C.D. Cal. Dec. 8, 2014) ............................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  134 S. Ct. 1749 (U.S. 2016) ........................................................................16

*Perfect 10, Inc. v. Cybernet Ventures, Inc.,*
  213 F. Supp. 2d 1146 (C.D. Cal. 2002).........................................................3

*Perfumebay, Inc. v. eBay, Inc.,*
  506 F.3d 1165 (9th Cir. 2007) ......................................................................8

*Playboy Enters. v. Netscape Commc'ns. Corp.,*
  354 F.3d 1020 (9th Cir. 2004) ......................................................................5

*Rearden LLC v. Rearden Commerce, Inc.,*
  683 F.3d 1190 (9th Cir. 2012) ......................................................................8

*Sallen v. Corinthians Licenciamentos LTDA,*
  273 F.3d 14 (1st Cir. 2001) .........................................................................11

*Sunearth, Inc. v. SunEarth Solar Power Co.,*
  839 F.3d 1179 (9th Cir. 2016) ....................................................................16

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
  505 U.S. 763 (1992) ......................................................................................5

*Wang v. Societe du Figaro,*
  -- F.3d --, 2018 U.S. Dist. LEXIS 13119 (S.D. N.Y. Jan. 26, 2018) ........14

**STATUTES**

15 U.S.C. § 1114 ............................................................................................*passim*

15 U.S.C. § 1117 ............................................................................................15

15 U.S.C. § 1125 ............................................................................................2, 7, 8, 14

15 U.S.C. § 2201 ............................................................................................2

**RULES**

Fed. R. Civ. P. 56 ............................................................................................1, 2

1

**DEFENDANT LOTTO SPORT ITALIA, S.P.A.'S
MOTION FOR SUMMARY JUDGMENT**

2

3     Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Lotto Sport

4     Italia, S.p.A. ("Lotto") moves for summary judgment as to each surviving claim for relief

      contained in Plaintiff's Complaint.

5

**MEMORANDUM OF POINTS AND AUTHORITIES**

6
## 1.0     INTRODUCTION

7     Dent is a cybersquatter and cannot show that his registration and use of

8     <lottoworks.com> and <lottostore.com> (the "Infringing Domain Names") did not violate

9     the Lanham Act or the Anti-cybersquatting Consumer Protection Act (the "ACPA").  With

10    regard to the Lanham Act, Dent's registration and use of the Infringing Domain Names

11    created a likelihood of confusion.  After all, both Infringing Domain Names contained the

12    entirety of Lotto's distinctive marks, and one of them offered links to Lotto's competitors.

13    With respect to the ACPA, Dent argues that he did not act in bad faith when he

14    registered, used, or trafficked in the Infringing Domain Names.  However, he admits that he

15    performed no due diligence and that he **never** performs due diligence prior to registering

16    domain names.  He registered and used distinctive domains with no knowledge regarding

17    whether he was violating anyone's intellectual property rights.  This constitutes bad faith.

18    Finally, Dent demands damages and reimbursement of his attorneys' fees.  None of

19    the remedies for his asserted claims for relief allow for an award of damages or attorneys' fees.

20    In the unlikely event that he does prevail, he is requesting relief that is unavailable to him.

21    Given that Dent is not entitled to the relief requested in his Complaint, Lotto respectfully

22    requests that the instant Motion be granted.

23

24

25

## 2.0    LEGAL ARGUMENT

### 2.1    Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any **material** fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994) (emphasis added). Once a defendant has identified parts of the record showing an absence of an issue of material fact, "the nonmoving party must 'designate specific facts showing that there is a genuine issue for trial.'" *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995).

### 2.2    Declaratory Relief (28 U.S.C. § 2201)

Dent asks for a declaration pursuant to 28 U.S.C. § 2201 that he did not violate the Lanham Act. The language of the claim asks the Court to hold that he did not violate the Lanham Act but only contains language regarding whether Dent registered the Infringing Domain Names in bad faith, contrary to the provisions of 15 U.S.C. § 1125(d)(1)(B)(ii). Section 1125 is the ACPA, one tiny sliver of the Lanham Act. Even if he did not violate this sliver, Dent violated the Lanham Act and infringed upon Lotto's intellectual property rights. He is not entitled to the relief he requests.

#### 3.2.1    Dent Violated the Lanham Act

Dent is liable for trademark infringement under Section 43(a) of the Lanham Act if he:

> uses in commerce any … name … or any false designation of origin, false or misleading description of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1114(1)(a) forbids using any "reproduction" or "colorable imitation of a registered mark in conjunction with the sale, offering for sale, distribution, or advertising of any goods

1 or services in connection with which such use is likely to cause confusion, or to cause mistake,

2 or to deceive."

3      Here, as Plaintiff, the burden of proof is on Mr. Dent to show that his use of Lotto's

4 marks "is [not] likely to cause confusion or mistake among the general public." *Perfect 10, Inc.*

5 *v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1187 (C.D. Cal. 2002).  He cannot do so.

6      Courts determine likelihood of confusion as a matter of law at summary judgment.  *See*

7 *Murray v. Cable Nat'l Broad Co.*, 86 F.3d 858, 859 (9th Cir. 1996).  In cases involving domain

8 names, confusion may occur when Mr. Dent's sole action was the registering of an infringing

9 domain name.  *See Green Prods. Co. v. Independence Corn By-Prods. Co.*, 992 F. Supp. 1070, 1080

10 (N.D. Iowa 1997).

11      To show that there is no likelihood of confusion, Mr. Dent must provide some

12 evidence that the similarity of his domain names to Lotto's marks is unlikely to "confuse

13 customers about the source of the products." *Abercrombie & Finch Co. v. Moose Creek, Inc.*, 486

14 F.3d 629, 633 (9th Cir. 2007).  Mr. Dent must be able to prove that, even though his domains

15 are identical to Lotto's marks, consumers would **not** be likely to assume that his domain names

16 are related to Lotto's marks.  *Acad. Of Motion Picture Arts & Scis. v. Creative House Promotions,*

17 *Inc.*, 944 F.2d 1446, 1455-56 (9th Cir. 1991).

18      The record is void of any evidence for Dent to meet his burden.  No surveys.  No

19 evidence. No expert testimony. He simply has taken domain names that correspond precisely

20 to Lotto's marks, where there were ads on those domains for Lotto's competitors,[1] and expects

21 this Court to hold that he did not violate the Lanham Act.  The U.S. Court of Appeals for the

22 Ninth Circuit uses a non-exhaustive eight-factor test enumerated in *AMF, Inc. v. Sleekcraft Boats,*

23

24     [1] While Lotto is aware of multiple Dent domains that contain infringing links, it cannot

25 show that one of them, <lottostore.com>, ever displayed infringing links.

RANDAZZA | LEGAL GROUP

1  599 F.2d 341 (9th Cir. 1979) to determine whether a defendant's use of a mark is confusingly

2  similar, which will be analyzed below.

### 3.2.1.1    Lotto's Rights to Its Marks

4  First, Lotto's marks are famous or, at the very least, distinctive and entitled to

5  protection. As noted in the Statement of Undisputed Facts, the LOTTO mark originated

6  when the *Caberlotto* family truncated their name as LOTTO for their sportswear and footwear

7  company. (*See* Statement of Undisputed Facts ("SUF"), at ¶ 1.) The company was formed in

8  1973 and concentrates its sales on athletic footwear, sportswear, and sports accessories. (*See*

9  *id.*, at ¶ 2.) The LOTTO mark is used by Lotto in over 110 countries, including the United

10  States. (*See id.*, at ¶ 3.) Lotto possesses registrations for LOTTO and variations thereof in

11  over 110 countries, including the United States. (*See id.*) Many of Lotto's registered marks in

12  the United States have been deemed incontestable. (*See id.*, at ¶ 8.) It conducts extensive

13  business on the World Wide Web, using <lottosport.com> and other domain names,

14  including <lottoworks.net>, which it registered in 2004. (*See id.*, at ¶ 6.)

15  The LOTTO marks are *arbitrary trademarks*[2] because the LOTTO marks do not suggest

16  that Lotto uses them to offer sporting equipment, sportswear, and related items. *See*

17  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 n.2 (9th Cir. 2002). Alternatively, at the

18  very least, Lotto's LOTTO marks are *suggestive trademarks*[3] because they "require imagination,

19  thought, or perception to link the trademark with the goods offered." *Interstellar Starship*

20  *Services*, 304 F.3d at 943 n.6.

21

22

23  [2]    For example, using "Amazon" as an online bookstore is an arbitrary trademark.
24  *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F3d 936, 943 n.6 (9th Cir. 2002).
   [3]    For example, using "Roach Motel" for insect traps is a suggestive trademark. *See*
25  *Interstellar Starship Services*, 304 F.3d at 943 n.6.

RANDAZZA | LEGAL GROUP

1

### 3.2.1.2     The *Sleekcraft* Factors

2     The Ninth Circuit uses an eight-factor test to determine whether there is a likelihood

3 of confusion.  Seven of these factors weigh heavily in Lotto's favor:

4     1.     *Strength of the mark*: Lotto's marks are strong and either arbitrary or suggestive

5 and thus automatically entitled to federal trademark protection. *Two Pesos, Inc. v. Taco Cabana,*

6 *Inc.*, 505 U.S. 763, 768 (1992).

7     2.     *Proximity of the goods*: Mr. Dent claims that he registered the Infringing Domain

8 Names to offer lottery services, but neither Infringing Domain has ever been used for that

9 purpose.  In fact, <lottoworks.com> was used to display links to Lotto's competitors, offering

10 identical goods to Lotto's.[4]  (*See* SUF, at ¶ 16.) Similarly, Dent's campaign to disrupt Lotto's

11 business includes at least 9 other domains used the same way. (*See id.*, at ¶ 24.)  Lotto sells its

12 goods on the Internet on online stores, and consumers would visit <lottostore.com> and

13 expect to see Lotto's goods for sale.  At the least, consumers would suffer initial interest

14 confusion.  "Initial interest confusion is customer confusion that creates initial interest in a

15 competitor's product.  Although dispelled before an actual sale occurs, initial interest

16 confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore

17 actionable trademark infringement." *Playboy Enters. v. Netscape Commc'ns. Corp.*, 354 F.3d 1020,

18 1025 (9th Cir. 2004); *see also* ; *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036,

19 1066 (9th Cir. 1999).

20     3.     *Similarity of the marks*: <lottoworks.com> contains the entirety of Lotto's

21 registered LOTTO WORKS mark, and <lottostore.com> contains the entirety of Lotto's

22

23

---

24     [4]     In fact, Dent continues to maintain and register domain names containing Lotto's
marks, and the associated websites display advertisements for Lotto's competitors and for
25 Lotto itself.  (*See* SUF, at ¶ 24.)

RANDAZZA | LEGAL GROUP

LOTTO mark, along with the descriptive word "store."  The Infringing Domain Names are identical to Lotto's registered, famous marks.

4.      *Evidence of actual confusion*: Actual confusion is unnecessary to find a likelihood of confusion.  *See Acad. of Motion Picture Arts & Scis.*, 944 F.2d at 1456.  Rather, "[l]ikelihood of confusion will be found whenever consumers are likely to assume that a mark is associated with another source or sponsor because of the similarities between the two marks." *Id.*  Here, the Infringing Domain Names are not only similar to Lotto's marks; they are identical.

5.      *Marketing channels used*: "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353.  Here, the marketing channels are identical – the internet.

6.      *Type of goods and purchaser care*: Here, the Court should consider the buyer to be an online shopper who may be easily distracted by competing links or a website bearing Lotto's trademarks. Lotto's goods are footwear, which is not terribly expensive or specialized, leaving shoppers unlikely to exercise great care.  *See, e.g., K-Swiss, Inc. v. USA Aisiqi Shoes, Inc.*, 291 F. Supp. 2d 1116, 1125 (C. D. Cal. 2003); *Asics Corp. v. Payless Shoe Source, Inc.*, 2006 U.S. Dist. LEXIS 103078, at *20 (Aug. 23, 2006).  It is very likely that a consumer would see links for products similar to Lotto's on one of Mr. Dent's websites and be confused as to the origin or sponsorship of his goods or services.  *See Brookfield*, 174 F.3d at 1066.  Dent cannot demonstrate otherwise, and it is his burden.

7.      *Likelihood of expansion*: <lottoworks.com> already offers goods competitive with Lotto's.  Mr. Dent continues to maintain and register domain names containing Lotto's marks. (*See* SUF, at ¶ 24.)  Mr. Dent has claimed that he could not control whether these competitive ads were displayed because there was a pending dispute, and thus GoDaddy blocked him from modifying the sites associated with the Infringing Domain Names.  (*See* SUF, at ¶ 17.)

However, with the <lottoworks.com> Infringing Domain Name, he removed the competitive ads on or about March 21, 2017 in order to make himself look better during this litigation. (*See* SUF, at ¶ 18.) This case was filed mere weeks earlier, and Dent desired to get the infringing links off of the website associated with the <lottoworks.com> Infringing Domain Name prior to Lotto's entry into the case and the commencement of discovery. (*See* Doc. # 9.). Moreover, Dent possesses registrations for at least nine additional domain names containing Lotto's marks. (*See* SUF, at ¶ 24.) Those domain names are not subject to any dispute and still contain advertisements for Lotto and its competitors. (*See id.*)

Under a Lanham Act analysis, Plaintiff Dent cannot prevail on his claim pursuant to 15 U.S.C. § 1114(2)(D)(v). The Infringing Domain Names should be transferred to Lotto, and this Court should enter judgment on Lotto's behalf.

### 3.2.2   Dent Violated The ACPA

Dent demands that this Court declare that his registration and use of the Infringing Domain Names "does not violate Defendant's rights under the Lanham Act." (Complaint, at ¶ 34.) He asserts that he "reasonably believes its [sic] registration and use of the [Infringing] Domain Names was and is lawful under the Lanham Act" but does not explain how links to Lotto's competitors is lawful under the Act. (*Id.*, at ¶ 37.) This Court should examine whether Mr. Dent's conduct was unlawful under the entire Lanham Act. Nevertheless, his actions still violated the ACPA. Mr. Dent's actions violate the ACPA if he (1) registered, trafficked, or used a domain name that (2) is identical or confusingly similar to a distinctive mark, or is identical, confusingly similar to, or dilutive of a famous mark (3) with a bad faith intent to profit. *See* 15 U.S.C. § 1125(d)(1).

Here, Mr. Dent registered <lottoworks.com> and <lottostore.com>. (*See* SUF, at ¶¶ 11-12.) <lottoworks.com> is identical to Lotto's registered LOTTO WORKS mark, which

**RANDAZZA** | LEGAL GROUP

1    has been in continuous use by Lotto for over twelve years.   (*See* SUF, at ¶¶ 8(h), 10.

2    <lottostore.com> contains the entirety of Lotto's famous LOTTO marks along with "store,"

3    a descriptive term for an online or brick-and-mortar location where consumers would expect

4    to buy Lotto's products.   *See Perfumebay, Inc. v. eBay, Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007)

5    (finding the "requisite similarity between PERFUMEBAY and EBAY because the

6    PERFUMEBAY mark incorporates the entirety of the EBAY mark"); SUF, at ¶ 8.   Both

7    Infringing Domain Names are identical, or confusingly similar to, Defendant's marks.

8         To determine bad faith, the most important factors to consider are the unique

9    circumstances of the particular case.   *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190,

10   1220 (9th Cir. 2012).   In addition, the ACPA contains nine non-exclusive factors to assist the

11   Court in a determination of bad faith.   *See* 15 U.S.C. § 1125(d)(1)(B)(i).

12        With regard to the unique circumstances of this case, a domain registrant can exhibit a

13   bad faith intent to profit when he registers a domain name "without first conducting a

14   reasonable investigation, let alone any investigation, as to whether [the domains] infringed on

15   any other party's rights" and "by having a practice and custom of registering domain names

16   without first conducting reasonable investigations as to whether the domain names infringed

17   upon any other party's rights."   *NextEngine Ventures, LLC v. Lastar, Inc.*, 2015 U.S. Dist. LEXIS

18   169672, at *9 (C.D. Cal. Dec. 8, 2014) (holding that the registrant acted in bad faith by

19   performing no investigation prior to registering <gocables.com>).   Failure to perform a

20   reasonable investigation precludes Mr. Dent from seeking shelter under the ACPA's bad faith

21   safe harbor.   *See id.* at *10.   After all, it is unreasonable for the registrant to believe that use of

22   the domain was lawful "without first conducting a reasonable investigation as to whether [the

23   Infringing Domain Names] infringed on any other party's rights."   *Id.*

24

25

Here, Mr. Dent admits that he performed no due diligence or investigation prior to registering the <lottoworks.com> and <lottostore.com> Infringing Domain Names.  (*See* SUF, at ¶ 14.)  In an interview with his designated rebuttal expert witness, Jefford Englander, Mr. Dent admitted that he never performs any investigation prior to registering domain names. (*See id.*, at ¶ 15.)  This is presumably why Mr. Dent had his rebuttal expert opine that no due diligence or best practices were required prior to registration of a domain name.  (*See id.*)  Of course, on this subject, Mr. Englander's opinion is not a legal opinion worthy of any weight.

Mr. Dent acted in bad faith by registering the Infringing Domain Names.  Looking at the non-exclusive factors enumerated in the ACPA, most weigh strongly in favor of a finding of bad faith against Mr. Dent, as follows:

I.     *The trademark or other intellectual property rights of the person, if any, in the domain name*: Mr. Dent admittedly has no trademark rights in either domain name (SUF, at ¶ 14).

II.     *The extent to which the domain name consists of the legal name of the person or a name that is commonly used to identify that person*: Mr. Dent does not claim, and there is no evidence to suggest, that Mr. Dent is commonly known as "lotto works" or "lotto store."

III.     *The person's prior use, if any of the domain name in connection with the bona fide offering of any goods or services*: The Infringing Domain Names have never been used to offer any bona fide goods or services.  The only goods that have ever been offered on either Infringing Domain were ads for Lotto's competitors and ads offering the domains for sale.  (SUF, at ¶¶ 16, 19).

IV.     *The person's bona fide noncommercial or fair use in a site accessible under the domain name*: Mr. Dent has never used the Infringing Domain Names in a noncommercial or fair manner.

VIII.     *The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of the famous marks of others that are famous at the time of registration of such domain*

*names, without regard to the goods or services of the parties*: As demonstrated in the Statement of Facts, Mr. Dent registered <arialasvegas.co>, <minecraftxxx.com>, <vallartaremax.com>, <remaxvallarta.com>, and <remaxvallartarealty.com>. Each of these domains contains the distinctive marks of others, meaning Dent is a cybersquatter.  (SUF, at ¶¶ 25-26).

In conjunction with the eighth factor, above, Mr. Dent continues to register domain names containing Lotto's marks, and those domain names continue to offer links to Lotto's goods and to the goods and services of Lotto's competitors.  (*See* SUF, at ¶ 24.)  It would be easy for Mr. Dent to remove these links if he intended not to infringe Lotto's intellectual property, but he has not done so.  His intent is clear.

Mr. Dent cannot show that his registration and use of <lottoworks.com> and <lottostore.com> was not unlawful under the Lanham Act or the ACPA.  His claim for relief pursuant to 15 U.S.C. § 1114(2)(D)(v) must fail.

## 2.3   Reverse Domain Name Hijacking (15 U.S.C. § 1114(2)(D)(v))

### 3.3.1   Elements of Claim

15 U.S.C. § 1114(2)(D)(v) provides that a domain name registrant "whose domain name has been suspended, disabled, or transferred" may "file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter."  If the registrant demonstrates that his use was not unlawful, the "court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant."  15 U.S.C. § 1114(2)(D)(v). Dent has not sought injunctive relief.  He has only sought damages and is not entitled to any.

Few courts have analyzed this statute.  However, to prevail upon a claim asserted under subsection (v), Plaintiff Dent must demonstrate that: (1) he was a domain name registrant; (2) his domain names were suspended, disabled, or transferred as a result of Lotto's complaint;

and (3) Dent's registration and use was not unlawful.  *Black v. Irving Materials, Inc.*, 2019 U.S. Dist. LEXIS 135882, at *29 (N.D. Cal. Aug. 10, 2019).

Here, Defendant Lotto concedes the first two prongs.  Dent registered the <lottoworks.com> and <lottostore.com> Infringing Domain Names. Moreover, Lotto filed an arbitration and the arbitrator found for Lotto and ordered the Infringing Domain Names transferred.  However, Mr. Dent cannot prove that his registration and use of the Infringing Domain Names was not unlawful, necessitating that this Court issue summary judgment on this claim in Lotto's favor.

With regard to the requirement that Mr. Dent demonstrate that his registration and use of the Infringing Domain Names was not unlawful "under this chapter," courts are split regarding whether "this chapter" refers to the Lanham Act as a whole or the Anti-cybersquatting Consumer Protection Act (the "ACPA").  *See Barcelona.com v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 627 n.2 (4th Cir. 2003) (concluding that subsection (v) refers to the Lanham Act); *but see Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 18 (1st Cir. 2001) (holding that subsection (v) refers to the ACPA).  Defendant asserts that subsection (v) was intended to refer to the Lanham Act as a whole.  "[T]his chapter" can only refer to the Lanham Act as a whole and not the ACPA individually.  However, regardless of this Court's interpretation of "this chapter," judgment should be entered in Lotto's favor.

Logically, Congress meant for subsection (v) to refer to the Lanham Act as a whole when it passed 15 U.S.C. § 1114(2)(D)(v).  The subsection specifically states that the registrant must demonstrate that his registration and use was not unlawful "under this chapter."  "[T]his chapter" must refer to Chapter 22 of the United States Code, entitled "Trademarks."  If Congress intended to limit "this chapter" to the ACPA, it would not have used such expansive

1   language.   The Court's analysis of whether Mr. Dent's actions were lawful should not be

2   restricted to the ACPA but to the Lanham Act as a whole.

3          Consider the effect of the statute if this is not the correct interpretation:  Since there

4   are hefty statutory damages if a registrant violates the ACPA, its standard is higher than the

5   rest of the Lanham Act.  Therefore, proving that one did not violate the narrower provisions

6   of the ACPA is easier than proving that one did not violate the much broader Lanham Act.

7          Dent will take the position that the statute only requires Dent to prove that he did not

8   violate the ACPA.  However, that interpretation leaves him free to violate the remainder of

9   the Lanham Act without consequence.  If his eventual interpretation is used, a cybersquatter

10  with a claim for Reverse Domain Name Hijacking could do the following:

11         (1)     The cybersquatter could register, use, or traffic in a domain name that violates

12  a trademark owner's rights under the Lanham Act, but that just barely escapes the higher

13  standard of the ACPA.

14         (2)     The cybersquatter loses a UDRP arbitration because of his bad faith conduct.

15         (3)     The cybersquatter could then sue the trademark owner under the Reverse

16  Domain Name Hijacking statute.

17         (4)     Then, if the "only the ACPA" standard is employed, the cybersquatter would

18  regain control of the infringing domain name – despite his violation of the Lanham Act.

19         Dent would have this Court codify the availability of relief to a cybersquatter who

20  violated the law, and would deny control of a domain name to an honest business.  That simply

21  does not make sense.  That could require a court to grant equitable relief, in a case under a

22  sub-chapter of the Lanham Act, to a party who violated the Lanham Act, as long as that party

23  was careful enough to avoid violating one smaller sub-section of the Lanham Act.

24

25

RANDAZZA | LEGAL GROUP

With all due respect to the courts that suggested otherwise, that would require an absurd result.  Courts should always begin the analysis of a statute with an examination of its plain language.  *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). If the plain language of the statute "is clear and consistent with the statutory scheme at issue, the statute's plain language is conclusive and [the court] need not inquire beyond the plain language of the statute." *In re Jackson*, 184 F.3d 1046, 1051 (9th Cir. 1999).  As demonstrated above, the plain language of subsection (v) is clear. It applies to Chapter 22 as a whole and not to the ACPA.

### 3.3.2   Dent's Registration Was Unlawful

Here, Dent needs to prove that his registration was lawful pursuant to the Lanham Act. Lotto's arguments with regard to whether Dent is entitled to a declaratory judgment that he did not violate the Lanham Act are applicable here and incorporated herein.  Moreover, in the unlikely event that the Court determines that 15 U.S.C. § 1114(2)(D)(v) applies only to the ACPA, the Court can additionally refer to Lotto's arguments above demonstrating that Dent registered, used, or trafficked in the Infringing Domain Names in bad faith.  To hold that it is "not unlawful" to register a registration of a domain name that 100% corresponds to a registered trademark, without doing any due diligence, would license an avalanche of bad behavior by cybersquatters.

### 3.3.3   Available Remedies Under Subsection (v)

With respect to this claim, Mr. Dent asks the Court solely for "costs and expenses … and reasonable attorneys' fees."  (Complaint, at Prayer For Relief ¶ 3.)  He additionally asks for statutory damages pursuant to the ACPA, even though he has not made a claim for cybersquatting.  (*See id.* at ¶ 4.)  He is entitled to nothing.

Claims made pursuant to 15 U.S.C. § 1114(2)(D)(v) are declaratory relief claims and are not affirmative claims.  *See Black*, 2019 U.S. Dist. LEXIS 135882, at *38-39.  By its plain

1   language, the subsection only authorizes a court to "grant injunctive relief to the domain name

2   registrant, including the reactivation of the domain name or transfer of the domain name to

3   the domain name registrant." Here, Mr. Dent's Prayer for Relief does not ask this Court for

4   injunctive relief or to prevent transfer of the Infringing Domain Names to Defendant Lotto.

5        Mr. Dent demands that this Court award him statutory damages pursuant to 15 U.S.C.

6   § 1125(d)(1).  However, he did not assert a claim for relief pursuant to Section 1125.

7   Therefore, damages under that section are not available to him.  *See MailPlanet.com, Inc. v. Lo

8   Monaco Hogar, S.L.*, 2007 U.S. Dist. LEXIS 105076, at *14-15 (S.D. Fl. Dec. 17, 2007) (holding

9   that statutory damages under 15 U.S.C. § 1125(d)(1) are not available when a party asserts a

10  claim pursuant to 15 U.S.C. § 1114(2)(D)(v)).

11       Regarding attorneys' fees and costs, while certain provisions of the Lanham Act and

12  the ACPA provide for an attorneys' fee and costs award to the prevailing party, subsection (v)

13  is silent regarding reimbursement of fees and costs.  It is accepted that where "Congress

14  includes particular language in one section of a statute but omits it in another section of the

15  same Act, it is generally presumed that that Congress acts intentionally and purposely in the

16  disparate inclusion or exclusion." *Wang v. Societe du Figaro*, -- F.3d --, 2018 U.S. Dist. LEXIS

17  13119, at *47-48 (S.D. N.Y. Jan. 26, 2018).

18       Based upon Lotto's research, two courts have opined upon whether attorneys' fees and

19  costs may be awarded on successful claims asserted under subsection (v).  Both concluded

20  that they may not. *See Wang*, 2018 U.S. Dist. LEXIS 13119, at *40, 49 (holding that subsection

21  (v) "provides only for injunctive relief to the domain name registrant" and does not authorize

22  an award of fees and costs); *MailPlanet.com*, 2007 U.S. Dist. LEXIS 105076, at *14-15.

23       Subsection (v) only authorizes this Court to provide Dent with injunctive relief, **which**

24  **he does not request**.  This claim fails on its merits. Even if Dent had succeeded in asserting

a valid claim for relief pursuant to subsection (v), he has failed to ask the Court for any relief permitted under the subsection and should take nothing by way of this claim for relief.

Moreover, Dent has unclean hands, rendering him ineligible for an injunction. Because unclean hands is an equitable remedy, traditional equitable considerations like unclean hands may militate against issuing an injunction even if the requesting party would otherwise be entitled to one. *See Inst. Of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 947 (9th Cir. 2013). Here, Dent admittedly did not exercise any diligence before registering the Infringing Domain Names. (*See* SUF, at ¶ 14.) The website located at <lottoworks.com> displayed advertisements for Lotto's competitors while it was registered by Dent. (*See id.*, at ¶ 16.) He currently possesses registrations for numerous other domain names that display advertisements for Lotto and its competitors and has taken no attempts to remove those advertisements. (*See id.*, at ¶ 24.) The arbitrator additionally held that Dent conveniently omitted that he registered the <lottoworks.com> Infringing Domain Name in 2016, and not 1998, to make it appear as though his rights in the Domain predated Lotto's rights in its marks. (*See* SUF, at ¶ 23(a).) Even if Dent was otherwise entitled to an injunction (he is not), his own bad acts would prevent the court from using its equitable powers to grant him one.

Lotto has already provided its analysis regarding Mr. Dent's violations of the ACPA and the larger Lanham Act above. It incorporates those arguments as if set forth fully herein.

### 3.2.3   Exceptionality of the Case

Section 35(a) of the Lanham Act provides that courts may award a reasonable attorneys' fee to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). Plaintiff Dent does not argue that this case is exceptional and appears to only request attorneys' fees pursuant to 15 U.S.C. § 1114(2)(D)(v). However, subsection (v) does not permit an award of

attorneys' fees.  Moreover, if Mr. Dent does request fees pursuant to Section 1117(a), they are not available to him.  On the other hand, Lotto *should* be granted its fees.

Courts should determine whether a case is "exceptional" through an examination of the "totality of the circumstances."  *Sunearth, Inc. v. SunEarth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016), *citing Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (U.S. 2016).  An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated."  *Id.*  Among other things, the trial court should consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.*

Here, Mr. Dent registered <lottostore.com> and <lottoworks.com>.  (*See* SUF, at ¶¶ 11-12.)  He registered the <lottoworks.com> Infringing Domain about one month after Lotto filed an application with the USPTO and about a decade after it started using the mark in commerce.  (*See id.*, at ¶¶ 8(h), 10.)  The <lottostore.com> website immediately forwarded it to a page offering it for sale, while the <lottoworks.com> resolved to a page offering links to Lotto's competitors.  (*See id.*, at ¶¶ 16, 19.)

By all appearances, Mr. Dent was a cybersquatter, and Lotto contends that he remains a cybersquatter.  Lotto filed an arbitration before WIPO, and the arbitrator agreed that Mr. Dent engaged in cybersquatting when he registered and used the Infringing Domain Names.  (*See* SUF, at ¶¶ 20-23.)  The arbitrator held that Dent conveniently omitted that he registered the <lottoworks.com> domain name in 2016, and not 1998, so that it would appear that his rights predated Lotto's (SUF, at ¶ 23(a)); that one of the sites associated with the Infringing Domain Names offered links to Lotto's competitors (SUF, at ¶ 16); and that Dent

RANDAZZA | LEGAL GROUP

had not used either of the Infringing Domain Names for any *bona fide* good or service. (SUF, at ¶ 22.)  Given all of that, Lotto not only initiated the UDRP against Mr. Dent in good faith, it was rewarded with a resounding win.

Dent cannot argue that Lotto entered this dispute in bad faith or with meritless claims. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525 (1994).  Dent had registered domain names containing the totality of Lotto's distinctive marks, ten of which contained advertisements for Lotto's competitors, and Lotto won the arbitration it filed against Dent.

This case is exceptional in Lotto's favor.  After all, Dent registered multiple domain names that contained the entirety of its marks.  He obtained the registration for <lottoworks.com> almost immediately after Lotto applied for registration of LOTTO WORKS with the USPTO.  The website associated with that Infringing Domain contained links to Lotto's competitors.  Dent made misrepresentations to the arbitrator, and Lotto prevailed in the arbitration.

Throughout this litigation, Lotto has proceeded in good faith.  Lotto engaged in discovery in good faith and filed no motions to compel.  Meanwhile, Dent admitted that he performed no due diligence before registering the Infringing Domain Names and acted insulted when it was suggested that he should have.  Dent misrepresented his ability to remove content from the Infringing Domain Names. And, in the meantime, he continued to register domain names containing Lotto's marks that display advertisements for Lotto's competitors. Lotto should prevail in this action, and it should be awarded its fees.

## 3.0   CONCLUSION

Based upon the arguments contained herein and the relevant excerpts of the record in the Statement of Undisputed Facts, Defendant Lotto Sport Italia, S.p.A respectfully requests that the Court grant the instant Motion for Summary Judgment.

Dated: October 9, 2019.          Respectfully submitted,

/s/ Ronald D. Green
Marc J. Randazza, AZ Bar No. 27861
Ronald D. Green, *pro hac vice*
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89147

*Attorneys for Defendant,*
*Lotto Sport Italia S.p.A.*

1       Case No. CV-17-651-PHX-DMF

2       **<u>CERTIFICATE OF SERVICE</u>**

3       I HEREBY CERTIFY that on October 9, 2019, I electronically filed the foregoing

4  document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct

5  copy of the foregoing document being served via transmission of Notices of Electronic Filing

6  generated by CM/ECF.

7                               /s/ Crystal Sabala
                                _____
8                               Employee,
                                Randazza Legal Group, PLLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25