John Berryhill, Ph.d. Esq.(*pro hac vice*)
204 East Chester Pike
First Floor, Suite 3
Ridley Park, PA 19078
+1.610.565.5601
+1.267.386.8115 fax
john@johnberryhill.com

Sean Kealii Enos (#023634)
Jeffrey W. Johnson (#024435)
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Telephone: (480) 655-0073
Facsimile: (480) 655-9536
kenos@IPlawUSA.com
jjohnson@IPlawUSA.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| David Dent, an Individual,<br><br>            Plaintiff,<br><br>    vs.<br><br>Lotto Sport Italia S.p.A, an Italian Corporation,<br><br>            Defendant. | Case No. CV 17-651-PHX-DMF<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

TABLE OF AUTHORITIES

**Cases**

*AIRFX.com v. AirFX LLC*, CV 11-01064-PHX-FJM, 2012 WL 3638721, (D. Ariz. Aug. 24, 2012) ................................................................................................................... 2, 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ............................................................................................................................. 2

*Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) ............................ 1

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 59 L. Ed. 2d 538 (1986) ……………………………………………………………………...2

*NextEngine Ventures, LLC v. Lastar, Inc.*, No. CV 13-0463 TJH JPRX, 20147 WL 6944877 (C.D. Cal. Dec. 8, 2014) …………………………………………………9

*Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936 (D. Nev. 2010) ………………..…11

*Wang v. Societe du Figaro S.A.*, No. 15CV9376PAEJLC, 2018 WL 566407 (S.D.N.Y. Jan. 26, 2018), report and recommendation adopted in part, rejected in part, No. 15 CIV. 9376 (PAE), 2018 WL 3122055 (S.D.N.Y. June 26, 2018)...................................5

**Statutes**

15 U.S.C. § 1114(2)(D)(v) ....................................................................................................1

**Rules**

Federal Rules of Civil Procedure 56(c)................................................................................1

Local Rule 56.1(b) …………………………………………………………………….1

Fed. R. Civ. P. 56(e) …………………………………………………………………….2

Plaintiff replies as follows in support of his Motion for Summary Judgment.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant inadequately controverts the facts asserted in Plaintiff's ("David's") Motion for Summary Judgment ("Motion"). Defendant's Controverting Statement ("DCSF", Dkt. No. 90) includes many denials and statements without controverting evidence as required by Local Rule 56.1(b). It claims Lanham Act violations (without evidence of "use" or "likelihood of confusion"), claims cybersquatting ("ACPA") without proof of "registration", use, trafficking, or "bad faith," denies Reverse Domain Name Hijacking ("RDNH", 15 U.S.C. § 1114(2)(D)(v)) without countering David's proof of no <u>registration</u> or <u>use</u> (unlawful or otherwise), and denies the Safe Harbor with no evidence. With no material fact disputed, this Court should grant Plaintiff's Motion.

**1. Statements of Facts and Requirements under Rule 56**

**1.1. Plaintiff's Statement of Facts**

Plaintiff's Statement of Facts ("PSOF", Dkt. No. 87) includes 103 statements <u>with declarations, depositions, and evidence.</u> David's Declaration ("Dent Decl.", Dkt. No. 87-1) includes hundreds of facts based on his personal knowledge, bolstered by evidence. His PSOF establishes: extensive experience in the gambling/lottery industry; significant preparation to expand into secondary lottery; reasons for (and details of) purchases of domains and their intended use; non-use or registration of the domains; and, that he never profited from, placed content on or used them. His Controverting Statement of Facts ("CSOF") and supporting evidence (Dkt. No. 91-1) also establish his actions as lawful.

**1.2. Defendant's Controverting Statement of Facts and Additional Facts**

A party disputing a fact "must support the assertion" by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations," or by "showing that the materials cited do not establish the absence. . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). <u>"[C]onclusory allegations, speculation, and unsubstantiated assertions"</u> will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute*

*on other grounds*, 28 U.S.C. § 636(b)(1) (Emphasized).  "The mere existence of a scintilla of evidence supporting the nonmovant's petition is insufficient; **there must be evidence** from which a trier of fact could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986) (Emphasized); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1359, 89 L. Ed. 2d 538 (1986) (nonmovant's showing of **"some metaphysical doubt" as to material facts is insufficient)** (Emphasized); *see also AIRFX.com v. AirFX LLC*, CV 11-01064-PHX-FJM, 2012 WL 3638721, at *1 (D. Ariz. Aug. 24, 2012).  Defendant's DCSF raises no issue of material fact.  31 PSOF statements are uncontroverted, while 50 are controverted <u>without evidence</u>, or by claiming David submitted no evidence.  In such cases courts may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).  These statements ignore the rule, and David's corresponding 50 PSOF statements should be deemed uncontroverted.

Only 22 of the 103 DCSF statements remain to possibly create an issue of material fact.[1]  However, they improperly rely on, or misrepresent, evidence.  Before addressing them, items (**bold**) relied on repeatedly by Defendant are addressed.  Defendant's Statement of Undisputed Facts "**DSUF**" (Dkt. No. 84) **¶18** mischaracterizes Exhibit L (Dkt. No. 84-13), implying that it demonstrates: 1. links to goods of Defendant or its competitors on lottoworks.com (it does not); 2.  link removal (links are unmentioned – it simply requests that parking be disabled); and, 3. that <u>David</u> had control (the email is from <u>counsel</u>, not David).  The email simply shows ParkingCrew disabling a domain in response to an attorney demand, and shows that David couldn't control the domain (who pays attorneys to do what they themselves can do for free?).  Response at 8:20-25.

**DSUF ¶16**, improperly cites to the **Trey Rothell Declaration ("Rothell Decl.") Ex. A (Dkt. No. 85-1)** (WIPO decision) (hearsay and entitled to <u>no</u> deference).  Response at

---

[1] PSOF "uncontroverted": ¶¶ 2-5, 9, 17, 28-31, 34, 37, 40-43, 46-48, 52-53, 55, 61, 75, 82, 91, 93, 99-101, 103.  PSOF "uncontroverted" (not support with evidence): ¶¶ 1, 6-8, 10-16, 18-27, 32-33, 35-36, 38-39, 44-45, 51, 71-74, 80-81, 83-88, 90, 94-97 and 102.

Case 2:17-cv-00651-DMF   Document 96   Filed 11/25/19   Page 5 of 15

12:22-27; 19:5-6.  It mischaracterizes **Rothell Decl. Ex. P (Dkt. No. 85-16)** as showing lottoworks.com when David owned it, but is taken 11/11/2016, <u>before</u> his purchase.

    **DSUF ¶19** wrongly claims lottostore.com was for sale for David's profit, relying on Rothell Decl., Ex. Q at ¶19 (Dkt. No. 85-17, a page from July 2017, 6 months <u>after</u> lottostore.com was locked as a result of Defendant's UDRP filing.  Response at 12:27-13:2.  It contains no ads/links to Defendant or its competitors (Def. Mot. at FN1), and is <u>not</u> an offer to sell.  It states "Would you like to buy this domain", with a "Learn More" button next to it.  When the "Learn More" button is clicked, visitors can use GoDaddy's Domain Buy service to see if the domain owner is <u>interested</u> in selling.  It says the page is <u>parked</u>, and on its face is <u>not</u> an offer to sell.  Response at 13:7-14; 19: 3-5.

    For **DCSF Exhibit 2 Sections 6(b) and 6(c) ("DiGiacomo 6(b), 6(c)")**, the only item in **DiGiacomo 6(b)** from during David's ownership is Ex. Q from **DSOF ¶19**. **DiGiacomo 6(c) Exhibit 15** shows lottoworks.com from well before David's purchase. **Exhibit 16** shows lottoworks.com from 12/20/16, (<u>after</u> lottoworks.com was locked – see lower right corner) that does not controvert David's statements.  It is a <u>parking page</u> (no advertisements, content, links, or sponsored listings) stating "The Sponsored Listings displayed above are served automatically by <u>a third party</u>." Response at 16:28-17:1.

    As for the 22 statements, none create an issue of material fact.  DCSF ¶14 admits Trimark relates to lottery, but falsely claims David's USPTO specimens show no lottery use (they <u>do</u> show this). (See, e.g., Dkt. 90-1 at p. 169 of 174).  DCSF ¶¶ 49-50, 56, 60, 64, 67, 70, 78 each rely on **DSOF ¶18** (**bold** items refer to the above analysis).  DCSF ¶¶ 58, 65 rely on **DSOF ¶16.**  DCSF at ¶¶59, 88, 89 cite only to **DSOF at ¶19.**  DCSF ¶66 cites DSOF ¶¶ 12 & 17 (which do not support Defendant's statement), **DSOF ¶16, DSOF ¶18,** and **DiGiacomo 6(c) and Exhibit 15.**  DCSF at ¶ 68 only cites to **DSOF ¶18** and **DSOF ¶19**, DCSF at ¶ 69 cites to **DiGiacomo 6(b)** and **DSOF ¶19**, and DCSF at ¶¶ 76-77, 92 cite to **DSOF ¶16, DSOF ¶19, and DiGiacomo 6(b) and 6(c)**.

    DCSF at ¶79 claims "fame" in certain countries, but simply speculates that it isn't "plausible" that David was unaware of Defendant (no "evidence" overcoming David's

- 3 -

12:22-27; 19:5-6.  It mischaracterizes **Rothell Decl. Ex. P (Dkt. No. 85-16)** as showing lottoworks.com when David owned it, but is taken 11/11/2016, <u>before</u> his purchase.

    **DSUF ¶19** wrongly claims lottostore.com was for sale for David's profit, relying on Rothell Decl., Ex. Q at ¶19 (Dkt. No. 85-17, a page from July 2017, 6 months <u>after</u> lottostore.com was locked as a result of Defendant's UDRP filing.  Response at 12:27-13:2.  It contains no ads/links to Defendant or its competitors (Def. Mot. at FN1), and is <u>not</u> an offer to sell.  It states "Would you like to buy this domain", with a "Learn More" button next to it.  When the "Learn More" button is clicked, visitors can use GoDaddy's Domain Buy service to see if the domain owner is <u>interested</u> in selling.  It says the page is <u>parked</u>, and on its face is <u>not</u> an offer to sell.  Response at 13:7-14; 19: 3-5.

    For **DCSF Exhibit 2 Sections 6(b) and 6(c) ("DiGiacomo 6(b), 6(c)")**, the only item in **DiGiacomo 6(b)** from during David's ownership is Ex. Q from **DSOF ¶19**. **DiGiacomo 6(c) Exhibit 15** shows lottoworks.com from well before David's purchase. **Exhibit 16** shows lottoworks.com from 12/20/16, (<u>after</u> lottoworks.com was locked – see lower right corner) that does not controvert David's statements.  It is a <u>parking page</u> (no advertisements, content, links, or sponsored listings) stating "The Sponsored Listings displayed above are served automatically by <u>a third party</u>." Response at 16:28-17:1.

    As for the 22 statements, none create an issue of material fact.  DCSF ¶14 admits Trimark relates to lottery, but falsely claims David's USPTO specimens show no lottery use (they <u>do</u> show this). (See, e.g., Dkt. 90-1 at p. 169 of 174).  DCSF ¶¶ 49-50, 56, 60, 64, 67, 70, 78 each rely on **DSOF ¶18** (**bold** items refer to the above analysis).  DCSF ¶¶ 58, 65 rely on **DSOF ¶16.**  DCSF at ¶¶59, 88, 89 cite only to **DSOF at ¶19.**  DCSF ¶66 cites DSOF ¶¶ 12 & 17 (which do not support Defendant's statement), **DSOF ¶16, DSOF ¶18,** and **DiGiacomo 6(c) and Exhibit 15.**  DCSF at ¶ 68 only cites to **DSOF ¶18** and **DSOF ¶19**, DCSF at ¶ 69 cites to **DiGiacomo 6(b)** and **DSOF ¶19**, and DCSF at ¶¶ 76-77, 92 cite to **DSOF ¶16, DSOF ¶19, and DiGiacomo 6(b) and 6(c)**.

    DCSF at ¶79 claims "fame" in certain countries, but simply speculates that it isn't "plausible" that David was unaware of Defendant (no "evidence" overcoming David's

declaration that he was unaware of Defendant until its UDRP filing.  Finally, DCSF at ¶98 cites to DSOF ¶¶ 1 and 8 to claim rights in Lotto Works prior to August 7, 2009, but neither cite provides support that <u>Lotto Works</u> was used prior to that date.  Defendant's own international filing date and other statements do not support an earlier date.

<span style="margin-left:2em"></span><u>None</u> of the 72 "controverting" responses controvert David's PSOF.  50 cite to no supporting evidence (are pure argument/speculation).  The remaining 22 rely on evidence that cannot be considered (e.g. WIPO decision), or contradicts or fails to support Defendant's statements.  Consequently, David's Statement of Facts is not controverted to create a material issue of fact, and this court should grant David's motion.

<span style="margin-left:2em"></span>Defendant includes Additional Facts("DSAF"), a number of which (DSAF at ¶¶ 1-4) are used for a new argument about the legality of gambling.  David objects, as the argument and evidence are newly disclosed, and the evidence lacks foundation and is hearsay, and should be ignored.  If not ignored, Plaintiff requests permission to respond with statements of fact and evidence.  Regardless, it is not sufficient to create an issue of material fact regarding David's business plans given David's industry knowledge and experience.  See Exhibit A, Dent Decl. at ¶¶ 3-7.  DSAF ¶5 is conjecture regarding where David lived and when, and should be given no weight.  DSAF ¶ 6 is objected to as irrelevant and lacking foundation.  Created this month, it says <u>nothing</u> about what might have been displayed in 2016, and ignores that search results vary (based location of searcher, search optimization spending, etc.).  It also shows (Dkt. 90-1, p. 8-9) the <u>majority</u> of resulting links as lottery-related, and <u>contradicts Defendant's claim (Dkt. No. 89 at 15:1-2) that "lottery" and "gaming" are not related.</u>  (See "whichlotto":  "The lotto is a form of gambling . . .popular the world over.").  A more relevant document is Dkt. No. 92-2 at p. 179-187, showing a search result for "lotto" from January 1, 2017 (just after the domain purchases).  Almost all of the results are related to lottery/gambling, and Defendant's name does not even appear until the 4th page (40th item).

<span style="margin-left:2em"></span>DSAF ¶¶7-13 speculate that Defendant is famous in Spain and that David lived in Spain, therefore David must have known about Defendant.  Regardless of Defendant's

alleged fame in Spain, it does not follow that therefore David knew about Defendant.

**2. Defendant's Memorandum**

Defendant admits that for RDNH, the <u>only</u> disputed issue is whether the <u>registration</u> or <u>use</u> of the domains by David is "not unlawful." Without use or registration (<u>or</u> if the use or registration are lawful), David prevails on RDNH. David showed no registration, no use, <u>and</u> "not unlawful" in his Motion and "Response" (Dkt. No. 91). This has not been controverted. Defendant <u>does not even mention</u> David's "no registration" argument in the motion. Its Lanham Act and ACPA arguments are addressed below, but without registration, use, or unlawful acts, David prevails. Before discussing two key points (non-use and "bad faith"), key cases and facts are discussed.

*AIRFX* is key regarding non-use/registration, and has similar facts (e.g.: no web page set up; pages parked at GoDaddy; business preparation by Plaintiff, Plaintiff claiming no income from the webpage). As here, Plaintiff obtained and <u>parked</u> the domain. The court found <u>no registration</u> and <u>non-use</u> determinative, ignored "likelihood of confusion" (e.g., *Sleekcraft*) analysis, and found no RDNH and no Lanham Act violation (no use). David's case is stronger (no ads vs. 3rd party ads in *AIRFX*, no commercial activity vs. some in *AIRFX*, generic/descriptive domains vs. not so in *AIRFX*). Motion at 11:20-13:7; 17:15-24; *see also AIRFX.com*, 2012 WL 3638721, at *4–5. *Wang* is also key (no evidence of bad faith in the record). *See generally Wang v. Societe du Figaro S.A.*, No. 15CV9376PAEJLC, 2018 WL 566407 (S.D.N.Y. Jan. 26, 2018), *report and recommendation adopted in part, rejected in part,* No. 15 CIV. 9376 (PAE), 2018 WL 3122055 (S.D.N.Y. June 26, 2018); Motion at 15:23-16:23.

Defendant cites frequently to certain "facts." Some have been addressed, but the following are also important: SUF ¶¶14-15 misstates evidence and Plaintiff's expert's testimony (Response at 11:19-12:7); SUF ¶¶ 21-23 rely solely (improperly) on the WIPO decision; SUF ¶24 incorrectly claims other lotto domains show links and/or advertising to Defendant or its competitors (they do not – Id. at 13:7-11); and, SUF ¶¶ 25-26 reference other domains for which David was never accused of wrongdoing (Id. at 13-2-6.)

## 2.1. Legal Argument

There has been <u>no use</u> or registration (wrongful or otherwise – David has provided extensive evidence), so he should prevail on his RDNH claim, and is entitled to Safe Harbor protection.  He also did not violate the Lanham Act (including the ACPA).

### 2.1.1. David Did Not Violate The Lanham Act

David did not violate the Lanham Act because there was no use.  Motion at 13:9-27; 17:25-19:4.  Nevertheless, he even analyzed the *Sleekcraft* factors, even though unnecessary due to no use.  Response at 7:3-9:9, incorporated herein by reference.

Defendant claims trademark violation without evidence to controvert David's facts. Notwithstanding other Lanham Act elements, there is no violation without <u>use</u>.  Plaintiff denied (with evidence) using the domains, while Defendant has <u>nothing</u> to show use. Defendant's Response ("Def. Resp.", Dkt. No. 89) doesn't even argue use.  Defendant merely states (twice) that David used the domains, or his use was unlawful. (Def. Resp. at 7:20; 18:20).  Only one "use" claim cites evidence (citing **SUF ¶24** relating to <u>other</u> (non-disputed) domains, <u>irrelevant</u> to whether David used the <u>disputed</u> domains).

Even Defendant's Motion ("Def. Mot.", Dkt. No. 83) mentions "use" only a handful of times, making no real "use" argument.  Defendant simply: claims (no evidence) David used them (Def. Mot. at 10:9); admits they have not been used to offer lottery services (Id. at , 10:8) or "bona fide goods and services" (Id at 14:17-18); claims (incorrectly) that someone else <u>said</u> David used them (Id, p. 10:9-10; 21:15-17, 20-24; – citing **SUF ¶16** and **SUF ¶¶20-23**); claims (incorrectly) they had links to Defendant's competitors offering identical goods and services to Defendant (Id. at 10:9-10 citing **SUF ¶16**); and, claims (incorrectly) that they offered goods that were ads for Defendant's competitors and ads offering the disputed domains for sale (Id at 14:18-19 citing **SUF ¶16** and **SUF ¶19**).  The ONLY use "evidence" cited to by Defendant is **SUF ¶16** (inadmissible WIPO decision and exhibit from <u>before</u> David;s purchase), **SUF ¶19** (GoDaddy parking page with no sale offer), and **SUF ¶¶20-23** (inadmissible WIPO decision).  Even if **SUF ¶19** showed the domain for sale (it does not), it is a GoDaddy 3rd party parking page.  *AIRFX*

showed these do not violate the Lanham Act (even though in *AIRFX* the GoDaddy pages did have ads). Finally, Defendant admits (Id. at FN1) it cannot show lottostore.com ever displayed infringing links. Defendant also mischaracterizes **SUF ¶24**, which shows other domains with no ads or links (irrelevant to whether David used the disputed domains).

Defendant's meagre use argument fails. In *AIRFX*, Plaintiff obtained domains, parking them at GoDaddy. The court found no use. This is all David has done. Defendant has not controverted Plaintiff's related PSOF. This court should find no use, and that consequently, David prevails on RDNH and did not violate the Lanham Act.

Defendant claims "initial interest confusion" without evidence. Without use, initial interest confusion is impossible. Defendant claims it occurs when "initial interest in a competitor's product" is created, and is "likely" when a company ("LOTTO") has "worldwide recognition" and a user navigates to lottostore.com. This ignores that lottstore.com is generic for lottery, David has no "website" at the domain, there are no Defendant or competitor ads or links on the site, and the page states it is parked by GoDaddy. This could not confuse anyone about source/origin of goods/services (none are offered, and anyone visiting the page sees that it is parked). One couldn't click on a competitor's link if they wanted to (there are none - Def. Mot. at FN1).

Defendant notes other parked domains not at issue in this case, but David's facts show they are part of his plan to sell lottery-related products at domains generic for lottery. Defendant's insinuation regarding an expired domain registration for David's son is unsupported. XXX does not just mean porn, it could imply danger ("keep out" sign or moonshine jug). David has never been accused of wrong for any domain (save here).

Finally, Defendant, without evidence, claims dilution. David never used the domains or placed content on them. They contain no links or advertisements for Defendant or its competitors, so there is no possibility of dilution. Defendant blurs the distinction between "Lotto" and "Lotto Works", but Lotto Works mark has been used, at best, for roughly a decade, and in limited markets, undermining its alleged fame.

**2.1.2. David Did Not Violate the ACPA**

The uncontroverted evidence demonstrates that David did not violate the ACPA.

### 2.1.2.1. David Did Not Traffic In The Infringing Domains

Defendant claims a simple domain purchase is trafficking (citing no caselaw in support). Trafficking means buying/selling things that are illegal. See Exhibit B, Adams Decl. (definitions). With no evidence of illegality, David's domain purchases are not "trafficking." Regardless, "trafficking" is not an element in an RDNH analysis context. The only issue is whether or not David's use and registration were not unlawful.

### 2.1.2.2. The Domains Are Not Identical or Confusingly Similar

This was addressed in David's Motion and Response. Motion at 5:7-15; 7:25-9:14; 14:12-15, 18-19, 23-24. Response at 4:25-7:8. Defendant downplays the nature of the domains in its analysis, but it is their generic (or descriptive) nature for David's goods that limit any rights Defendant might have. David may use those domains to describe his lottery goods and services. Defendant itself downplays the importance of "store" and "works" in its UDRP filing (arguing that the term "lotto" is the key term). This strengthens David's case for the right to use lottostore.com and lottoworks.com, as the "lotto" portion is clearly synonymous with lottery and gambling (see Dkt. No. 90-1 p. 8-9; Dkt. 92-2 p. 157-187). Finally, Defendant argues (without evidence) that the domains are confusingly similar, providing nothing showing how someone typing in lottostore.com or lottoworks.com and seeing a web page displaying lottery products could be confused into thinking that Defendant, a shoe company, is the source/origin of those lottery products. Regardless, this is impossible. The domains are unused, parked showing no products or ads. Defendant's rights in its marks, do not include excluding people from using words to call things by their name.

### 2.1.2.3. David Has No Bad Faith Intent To Profit

David addressed bad faith in his Motion (at 13:28-19:4) and Response (at 9:26-13:23). Defendant offers no evidence seriously challenging his argument and evidence.

In its response (the only items arguably referencing evidence), Defendant: falsely claims David did not perform (and never performs) due diligence, citing to Lotto SUF ¶¶

14-15 (which misstate evidence regarding David's purchase and Plaintiff's Expert's testimony (see Response at 11:14-12:16); cites to **SUF ¶24** (misrepresenting what is shown at domains <u>not at issue in this case</u> – Id at 10:12-23; 13:7-20); speculates that David must have known of Defendant (due to alleged Spanish fame), that he must have lived in Spain, and that search results for "lotto works" performed days ago are the same as those from 2016 (ignoring the dynamic nature of search results) (CSAF at ¶¶ 7-13); claims David could have removed links at locked domains (misstating the evidence - see SUF ¶18); and speculates that David won't be able to operate the business he is working on (CSAF at ¶3).   It also (with no citations): misstates, and fails to distinguish, the *NextEngine* case it cites for support (see Response at 10:24-12:11); ignores the generic/descriptive nature of the domains for lottery goods and services, and the relevance of that to any alleged required diligence; claims that lotto and gaming have almost nothing in common (see above); and claims that there were competitive links or advertising or offers for sale on the domains when the evidence does not support this.

Its Motion: relies on **SUF ¶14** (misstates evidence and *NextEngine* and fails to distinguish it); cites **SUF ¶16** and **¶19**; implies wrongdoing regarding other domains (**SUF ¶¶25, 26**) with no proof of wrongdoing; and again references **SUF ¶24**.

Finally, Defendant raises a new argument (and previously undisclosed evidence) claiming David can't legally expand his business (and lamenting it doesn't know where David plans to operate – another admission the domains aren't used).  This also is speculation and based on inadmissible hearsay.  It ignores David's significant industry and licensing experience, and speculates that David can't figure out how to get the permission he needs when ready to launch.  See. Exhibit A, Dent Decl. at ¶¶3-7.

 As noted at the outset, Defendant must contest David's facts with <u>evidence</u>, not mere speculation.  Conclusory allegations, speculation, misrepresentations, and unsubstantiated assertions do not suffice.  The uncontroverted facts demonstrate that David did not have a bad-faith intent to profit or <u>register</u> or <u>use</u> the domains unlawfully in any way. Furthermore, he believed (with reasonable grounds) that his use of the domains was fair

- 9 -

us or otherwise lawful, allowing him to fall under the safe harbor provision.

In short, Defendant claims advertising (no proof of ads), links (no proof), knowledge of Defendant (no proof), offers to sell by David (no proof), other domains owned (no evidence of any wrong actions by David), and failure of "due diligence" (no evidence that under the circumstances, diligence, if <u>any,</u> was necessary, and that David's efforts were inadequate). Defendant can't prove the above. More importantly, none of Defendant's alleged evidence shows any <u>bad faith intent to profit</u> on David's part. It doesn't even lay out how he would have profited IF its facts were true. Defendant doesn't claim that David tried to sell the domains to it or a competitor, the hallmark of an ACPA violation. As in Wangs, <u>evidence that David had a "bad faith intent to profit" is absent from the record,</u> and this court should find that David prevails on his claims.

The undisputed facts also show that David is also entitled to safe harbor protection. Defendant's arguments in this regard rely on the same distortions discussed above with respect to bad faith. David's entitlement to this protection are detailed in his Motion (at 19:6-20:7) and Response (at 17:12-18:8), incorporated herein by reference. David believed (and had reasonable grounds to believe) his intended use of the domains was fair use or otherwise lawful. Defendant provides no facts to seriously challenge this.

### 2.1.3. Lotto Engaged in Reverse Domain Name Hijacking ("RDNH")

To prevail on RDNH, David's <u>registration or use</u> need only be "not unlawful under this chapter." Defendant attempts to require a full Lanham Act and ACPA vindication for David to prevail, but the law does NOT require this (no trafficking or other factors, simply that <u>registration or use</u> were not unlawful). There was no registration (Defendant doesn't even bother to argue this), and as shown above, there was no use by David. The facts and analysis are almost identical to *AIRFX* (no registration, no Lanham Act use) which resulted in a victory for the domain holder. The relief requested (including a declaration that David's actions were not unlawful, and the prevention of the transfer of the domains away from David) have also been previously discussed (Motion at 20:10-13; Response at 14:27-15:7; 16:7-17:11), and those arguments are incorporated herein by

reference. The complaint and filings taken in their entirety make it clear that David wants this court to prevent the transfer of the domains away from him, and further allow for that relief (available under the statute) by seeking any additional relief that the court deems just and proper. David also argues that "under this chapter" refers only to the ACPA, not the Lanham Act as a whole (Id. at 13:26-14:26, incorporated herein by reference). Courts have differed, but one case is particularly helpful in proving this. *See Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 959-60 (D. Nev. 2010). To require that one's actions be "not unlawful" under the entire Lanham Act ignores the limited purpose for which the RDNH law was passed (to provide relief to wronged domain holders, not to provide a vehicle for unscrupulous trademark holders prevailing in a UDRP cybersquatting action to force legitimate domain name owners to disprove a broad negative (no violation of any of the trademark holder's rights)). If a mark owner's broader trademark rights are violated, they can sue under the Lanham Act for damages and injunctive relief. David did not "register" or use the domain according to RDNH. Even if he did, Defendant has not provided evidence showing that his registration or use was unlawful at all (including under the Lanham Act or ACPA).

For these reasons, and those in his Motion and Response, David did not violate the ACPA (or, for that matter, the Lanham Act), and consequently, he should prevail in his RDNH claim, regardless of whether "this chapter" is broadly or narrowly interpreted.

### 2.1.4. David Is Entitled to an Award of Fees and Costs

As discussed in his Motion (at 20:15-22) and Response (18:10-19:18, incorporated by reference), David is entitled to his fees and costs. In opposition, Defendant again improperly cites to the WIPO decision, ironically providing additional support for David's exceptional case argument with respect to how Defendant has litigated this case.

### 2.2. Conclusion

With respect to the only disputed element of David's claims, his registration or use of the Disputed Domains is not unlawful either under the Lanham Act or under the ACPA, entitling him to summary judgment, which is respectfully requested.

Respectfully submitted this 25th day of November, 2019.

          SCHMEISER, OLSEN & WATTS LLP

          By:
          */Jeffrey W. Johnson /*

          Sean K. Enos
          Jeffrey W. Johnson
          SCHMEISER, OLSEN & WATTS, LLP
          18 E. University Drive, Suite 101
          Mesa, Arizona 85201

          Attorneys for Plaintiff

**Certificate of Service:**

I hereby certify that on this 25th day of November, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

The Honorable Deborah M. Fine

United States District Court

Marc J. Randazza, AZ Bar No. 27861

Ronald D. Green, *pro hac vice*

2764 Lake Sahara Drive

Suite 109

Las Vegas, NV 89117

Tel: 702-420-2001

Email: rdg@randazza.com

*/s/ Steven Adams*

Steven Adams