John Berryhill, Ph.d. Esq. (*pro hac vice*)
204 East Chester Pike
First Floor, Suite 3
Ridley Park, PA 19078
+1.610.565.5601
+1.267.386.8115 fax
john@johnberryhill.com

Sean Kealii Enos (#023634)
Jeffrey W. Johnson (#024435)
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201
Telephone: (480) 655-0073
Facsimile: (480) 655-9536
kenos@IPlawUSA.com
jjohnson@IPlawUSA.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

David Dent, an Individual,

                Plaintiff,

      vs.

Lotto Sport Italia S.p.A, an Italian Corporation,

                Defendant.

Case No. CV 17-651-PHX-DMF

**PLAINTIFF DAVID DENT'S MOTION FOR ATTORNEYS' FEES**

**TABLE OF CONTENTS**

I.    **ELIGIBILITY**........................................................................4

  a.   Description and Nature of the Case ...........................................4

  b.   Judgment ................................................................................4

  c.   Applicable Authority and Standard for the Reward.....................4

II.  **ENTITLEMENT** ................................................................................9

  a.   Similarity to AirFX ..................................................................9

  b.   Additional Factors .................................................................10

  c.   Plaintiff Is Entitled to Fees for Preparing This Motion .............19

III. **REASONABLENESS OF REQUESTED AWARD**............................19

# TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>

*AirFX.com v. AirFX, LLC*, No. CV 11-01064-PHX-FJM, 2013 WL 857976 (D. Ariz. Mar. 7, 2013) ..........................................................................................................7

*Ally Fin., Inc. v. Jones*, No. CV-13-00139-PHX-PGR, 2013 WL 3808107 (D. Ariz. July 23, 2013) ..........................................................................................................6

*Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683 (9th Cir. 2019) ............8

*Anhing Corp. v. Viet Phu, Inc.*, 740 Fed.Appx. 115 (9th Cir. 2018) ................................8

*Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983) ....................19

*Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717 (9th Cir. 2018) ......................................7

*Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210 (9th Cir. 2003) ....................6

*eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 4856276 (D. Ariz. Oct. 11, 2012), *aff'd*, 569 F. App'x 527 (9th Cir. 2014) ..........................................7

*ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 2016-1047, 2017 WL 3668968 (Fed. Cir. Aug. 25, 2017) ..........................................................................................8

*Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318 (Fed. Cir. 2004) ................................5

*Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401 (9th Cir. 2018) ....................7

*Marctec, LLC v. Johnson & Johnson*, No. 07-CV-825-DRH, 2010 WL 680490 (S.D. Ill. Feb. 23, 2010), *aff'd*, 664 F.3d 907 (Fed. Cir. 2012) ....................................................19

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967 (Fed. Cir. 2017) ..........................................................................................................8

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 775 F. App'x 350 (9th Cir. 2019) ..........................................................................................................8

*Nova Chemicals Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012 (Fed. Cir. 2017) .....8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014) ..........................................................................................5, 6

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383 (Fed. Cir. 2017) ..........................................................................................15

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016)...................6

*Xcentric Ventures, LLC v. Mediolex Ltd.*, No. CV-12-130-PHX-SMM, 2017 WL

   5054586 (D. Ariz. Sept. 27, 2017) .................................................................................8


<u>FEDERAL STATUTES</u>

15 U.S.C. § 1117(a)...........................................................................................................5

15 U.S.C. § 1125(d)...........................................................................................................4

15 U.S.C. § 1114(2)(D)(v) ............................................................................................4, 9

35 U.S.C. § 285 ............................................................................................................5, 16


<u>RULES</u>

Fed. R. Civ. P. 54(d)(2) .....................................................................................................4

LRCiv 54.2(c)(3) .........................................................................................................19, 20

LRCiv 54.2 .........................................................................................................................4

LRCiv 54.2(d) ...................................................................................................................19

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and LRCiv 54.2, Plaintiff David Dent hereby moves for an award of reasonable attorneys' fees in the amount of $243,991.50.  This Motion is supported by the following Memorandum, the Affidavit of Jeffrey W. Johnson, and all Supporting Documentation as required by LRCiv 54.2.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   ELIGIBILITY

#### a.  Description and Nature of the Case

This case was triggered by Defendant's filing of a UDRP action whereby Defendant attempted to take from David Dent two domains that he had purchased in 2016 for use in his gambling-related business.  The UDRP decision ordered the domains transferred to Defendant, forcing David to file this action to prevent the transfer of the domains.  Throughout the UDRP proceeding and this action, Defendant accused David of violating the ACPA provisions of the Lanham Act and violating Defendant's other trademark rights under the Lanham Act.  David requested relief under the Anticybersquatting Consumer Protection Act ("ACPA") provisions of the Lanham Act in 15 U.S.C. § 1114(2)(D)(v) and requested declaratory relief that his registration and/or use of the domains at issue did not violate Defendant's rights under the Lanham Act.

#### b.  Judgment

On March 11, 2020, the Court granted Plaintiff's Motion for Summary Judgment and denied Defendant's cross-motion.  The court found for David on his Reverse Domain Name Hijacking claim for two reasons:  1. David had not violated the Lanham Act's ACPA provisions under 15 U.S.C. § 1125(d) in that he did not unlawfully register or use "at all, let alone unlawfully use" the domains; and, 2. Regardless, he was entitled to the "safe harbor" provision of the Lanham Act under 15 U.S.C. § 1125(d)(1)(B)(ii).  The court also found that, because David had not used the domains, he had not, as a matter of law, violated the Lanham Act.  In short, David prevailed on all of his claims.

#### c.  Applicable Authority and Standard for the Reward

The court may award attorneys' fees to the "prevailing party" in litigation involving a registered trademark if the court determines the case to be "exceptional."  15 U.S.C. § 1117(a).  Having prevailed on all of its claims, Plaintiff is indisputably the "prevailing party" in this case.  *See Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004), *abrogated by Raniere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018) (stating that a "prevailing party" is one that receives "at least some relief on the merits" of the case that alters the legal relationship between the parties).

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court "lower[ed] considerably" the standard for what makes a patent case "exceptional" under 35 U.S.C. § 285.  *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374 (Fed. Cir. 2015) (acknowledging Octane Fitness "change[d] the law").  The Court did away with a rigid and inflexible framework that limited fees to bad faith or misconduct and restored a trial court's discretionary role to award fees.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557, 134 S. Ct. 1749, 1758 188 L. Ed. 2d 816 (2014).

The *Octane* Court held that an "'exceptional' case is **simply one that stands out from others with respect to the substantive strength of a party's litigating position** (considering both the governing law and the facts of the case) **or the unreasonable manner in which the case was litigated**."  *Octane*, 134 S. Ct. at 1756 (emphasis added).  The Court directed district courts to determine exceptionality "in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*  Non-exclusive factors to consider for "exceptional" cases include: "frivolousness, motivation, objective unreasonableness [both as to factual and legal positions] and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id*. at 1756, n.6.  Finally, because "Section 285 demands a simply discretionary inquiry" and "imposes no specific evidentiary burden, much less such a high one," litigants need only satisfy "*a preponderance of the evidence standard*."  *See id.* at 1758 (emphasis added).  "[A] case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Id*. at 1757.  In this regard, "[i]t is the

'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." *Id.* at 1756.

In 2016, the 9th Circuit overruled previous, more stringent standards for the review of prevailing party attorneys' fee requests in trademark cases, adopting the new, more lenient standard adopted by the United States Supreme Court in *Octane Fitness.*

> We agree with the majority of our sister circuits and conclude that *Octane Fitness* and *Highmark* have altered the analysis of fee applications under the Lanham Act.  Therefore, district courts analyzing a request for fees under the Lanham Act should examine the "totality of the circumstances" to determine if the case was exceptional, *Octane Fitness*, 134 S.Ct. at 1756, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard.

*SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). "Specifically, the Court cited a '"nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."'" *Id.* at 1181 (quoting *Octane Fitness*, 134 S.Ct. at 1756, n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19, 114 S.Ct. 1023)).

Prior to *SunEarth*, the standard for fee awards in the 9th Circuit required proof of malicious, fraudulent, deliberate or willful infringement, and had required that the proof be by clear and convincing evidence.   For example: Attorneys' fees may be awarded in "exceptional [trademark] cases." *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (quoting 15 U.S.C. § 1117(a)).  "A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." *Id.* (citing Stephen W. Boney, Inc. v. Boney Serv., Inc., 127 F.3d 821, 825 (9th Cir.1997).  "The Court concludes that the plaintiff is entitled to an award of fees pursuant to § 1117(a) because it has sufficiently established that the defendant's wrongful conduct, as noted above, was at least deliberate or willful." *Ally Fin., Inc. v. Jones*, No. CV-13-00139-PHX-PGR, 2013 WL 3808107, at *2 (D. Ariz. July 23, 2013).  "I **FIND** that the plaintiff's claims here were groundless and

unreasonable, and that the defendants are eligible for attorneys' fees. I previously noted that "[a] plaintiff cannot sustain its Lanham Act claim by merely throwing mud at the wall and hoping that some of it will stick. *This is precisely what the plaintiff has done in this case.*" (Mem. Op. & Order [Docket 168], at 13 (emphasis added))." *eMove Inc. v. SMD Software Inc.*, No. CV-10-02052-PHX-JRG, 2012 WL 4856276, at *2 (D. Ariz. Oct. 11, 2012), *aff'd,* 569 F. App'x 527 (9th Cir. 2014).  Importantly, in a case extremely close in its facts to the present case (*AirFX*, discussed at length, *infra*), the court, applying this stricter "pre-*Octane*" standard and burden of proof.  The standard applied by that court (requiring proof by clear-and-convincing evidence) was whether the case was "groundless, unreasonable, vexatious, or pursued in bad faith."  *AirFX.com v. AirFX, LLC*, No. CV 11-01064-PHX-FJM, 2013 WL 857976, at *1 (D. Ariz. Mar. 7, 2013) (quoting *Gracie v. Gracie,* 217 F.3d 1060, 1071 (9th Cir.2000)).  The court found the case to be exceptional and awarded the Plaintiff his attorneys' fees.  *Id.* at *4.

As noted above, *Octane Fitness* lowered the standard and burden, making it easier now than at the time of *AirFX* to qualify as an "exceptional case."  Courts in the 9th Circuit have applied this more lenient standard since the *Sun Earth* decision, and these cases provide insight into the application of the new, more lenient standard.  See, for example, the following 9th Circuit cases upholding fee awards post-*Sun Earth*:  *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 719 (9th Cir. 2018) (counterclaims wholly lacking in merit given the undisputed evidence); "Here, the district court applied the totality of the circumstances standard and . . . focused on the frivolousness and objective unreasonableness of the case, both of which are identified as relevant factors in *Octane* and *SunEarth*."  *Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 409 (9th Cir. 2018); "[T]hose claims are still "exceptional" because they are extraordinarily weak—the only argument AA made was based on a presumption of validity that was two years too late and had no chance of succeeding. Similarly, AA's . . . trademark claims were extremely weak, and were effectively refuted by AA's own corporate designee. Accordingly, the district court did not abuse its discretion in finding

the Lanham Act claims exceptional and awarding fees to LIB." *Amusement Art, LLC v. Life Is Beautiful, LLC*, 768 F. App'x 683, 687 (9th Cir. 2019); "NRCC did not have any evidence to support any of its claims, and offered no evidence of commercial use, likelihood of confusion in the marketplace, or damages. NRCC did not have a colorable claim to begin with and pursued its litigation in an unreasonable manner. The district court awarded almost $300,000 in attorney's fees under both the federal and state statutes. On this record, we hold that the award of attorney's fees was not an abuse of discretion." *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 775 F. App'x 350, 352 (9th Cir. 2019). *See also Anhing Corp. v. Viet Phu, Inc.*, 740 Fed.Appx. 115 (9th Cir. 2018) (applying the new standard but denying fees); *Xcentric Ventures, LLC v. Mediolex Ltd.*, No. CV-12-130-PHX-SMM, 2017 WL 5054586, at *1 (D. Ariz. Sept. 27, 2017) (apparently the only case in this District applying the post-*Octane* standard, ordering re-briefing for the parties to argue the proper post-*Octane* standard).

The Federal Circuit's treatment of post-*Octane* patent cases is informative for trademarks (the "exceptional case" standard is the same for both). "At a minimum, the district court did not abuse its discretion in holding that NOVA's litigating position was objectively baseless." *Nova Chemicals Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012, 1018 (Fed. Cir. 2017). "On remand, the district court found that this case is exceptional because 'Icon's litigation position stands out as a particularly and unusually weak case on the merits,' J.A. 10, and 'the case was litigated in a manner that stands out from more routine patent cases,' J.A. 17." *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 2016-1047, 2017 WL 3668968, at *1 (Fed. Cir. Aug. 25, 2017). Another court focused on weak arguments: "The district court acted well within its discretion in finding this case exceptionally meritless compared with mine-run cases to warrant an award of attorney fees . . . . It found that NOV's 'legal arguments' were 'remarkably weak,' and 'NOV offered no credible arguments to rebut Omron's grounds for dismissal.' J.A. 59." *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 973 (Fed. Cir. 2017).

## II.   ENTITLEMENT

That this case is exceptional is clear for a number of reasons as set forth below.

### a.  Similarity to AirFX

Determining that this is an exceptional case is straightforward given that a court in this district already determined the *AirFX* was exceptional, awarding fees to the prevailing party.  This court has acknowledged the similarity of the facts between *AirFX* and this case (see Doc. 97 at p.8 and p.10).  The similarity is striking.  In *AirFX*, Plaintiff purchased an (already existing) domain name registration (airfx.com), Defendant (AIRFX, LLC), owner of the trademark AIRFX (registered after the domain name was registered) for motorcycle and vehicle parts, filed a domain name dispute before the National Arbitration Forum ("NAF"), the NAF ruled in favor of the Defendant and ordered GoDaddy to transfer the domain, and Plaintiff filed a claim in the U.S. District Court for the District of Arizona for reverse domain name hijacking ("RDNH") under the Lanham Act (15 U.S.C. § 1114(2)D(v)).   Plaintiff had not posted content on airfx.com or created a website for it, the domain was parked at a splash page that included third-party advertisements, and Plaintiff had not sold products using the AIRFX brand.  Plaintiff prevailed on summary judgment.  Replace airfx.com with lottostore.com/lottoworks.com, replace the AIRFX trademark with LOTTOWORKS, and change the name of the parties, and you essentially have the instant case.  The *AirFX* court found that case exceptional, awarding fees.  For the sake of consistency alone, David should be awarded his fees, as there is no difference in relevant facts that would call for a different result.

Additional facts make David's case even stronger.  First, *AirFX* was based on the older, more challenging pre-*Octane* standard (whether the case was "groundless, unreasonable, vexatious, or pursued in bad faith").  In other words, the *AirFX* court found that facts essentially identical to those of the present case met the higher "groundless, unreasonable, vexatious, or pursued in bad faith" standard.  David's case even more easily clears the current lower post-*Octane* standard (simply standing out from others with respect to the strength of a party's litigating position (considering both law and facts

of the case) or the unreasonable manner in which the case was litigated in the case-by-case exercise of the court's discretion, considering the totality of the circumstances). Next, *AirFX* required meeting the pre-*Octane* "clear and convincing" standard rather than the current "preponderance of the evidence" standard.  If essentially identical facts in *AirFX* met a higher standard and burden, essentially identical facts here should even more easily clear the "exceptional" threshold.  For at least these reasons, this court should find that this case (essentially identical to *AirFX)* is exceptional, and award Plaintiff his fees.

### b.  Additional Factors

Observations (See I. c. above) regarding the post-*Octane* standard and applicable factors can be made from its application in the 9th Circuit and this District (particularly when fees were awarded):  a case presenting **exceptionally meritless claims** may sufficiently set itself apart; it is the '**substantive strength of the party's litigating position**' that is relevant to an exceptional case determination; the court must consider the totality of the circumstances; the need to advance considerations of compensation and deterrence is important; whether claims are wholly **lacking in merit** given the undisputed evidence; frivolousness and objective **unreasonableness of the case**; claims "exceptional" because they are **extraordinarily weak** or **extremely weak**; **lack of any evidence to support claims, no evidence of commercial use**, likelihood of confusion, or damages; **lacking a colorable claim to begin with**; litigating in an unreasonable manner. Factors in Federal Circuit patent cases with fee awards include: objectively **baseless litigating position**; **litigation position** particularly/unusually **weak**; **remarkably weak legal arguments**, and **no credible arguments** rebutting opponents grounds.

With the above in mind, Defendant's legal arguments, litigating position, claims, and manner in which it litigated the case further make this an exceptional case.  As explained more fully, *infra,* Defendant's position was baseless.  No reasonable litigant could expect success on the merits.  Defendant did not make losing, but reasonable arguments, Defendant made arguments that objectively – based on the law and facts it

knew – had no merit.  If the arguments above do not already clearly show exceptionality, these additional facts, supported by the record, make it even clearer:

1.    Defendant knew that David Dent had not "registered" the disputed domains (as "registration" is defined for ACPA violations) before filing any pleading into this case, and indeed, before filing its UDRP complaint.  Defendants own UDRP complaint, pleads (and supports with evidence), domain creation dates of July 30, 1998 for <lottoworks.com> and January 4, 2011 for <lottowtore.com> (both of which are years prior to David Dent's acquisition, and prior to Defendant's alleged use of its corresponding marks).  *See* Doc. 11-1 (Defendant's UDRP Complaint) at pp. 5-6 of 134. Furthermore, Defendant's counsel was well aware of the standard (that a purchase of a registration did not constitute registration under the ACPA), because counsel for Defendant was an attorney of record in the *AirFX* case that clearly articulated that standard.  In fact, counsel for defendant even cited to *GoPets* in the *AirFX* case regarding the issue of registration date (See *AirFX* Doc. 65 at pages 6-7).  In spite of having this knowledge prior to this case, Defendant continued to argue that David Dent was a "cybersquatter" in violation of the ACPA.

2.    Defendant knew, prior to this case, the contents of the UDRP proceeding, knew the parties' statements in those documents about the creation/registration dates of the disputed domains, and that David's statements were in fact true.  More specifically, Defendant claimed that David lied in the UDRP proceeding, making the completely untrue statement that "David Dent claimed he registered the <lottoworks.com> Infringing Domain Name in 1998 when he actually registered it in 2016."  Doc. 11 at p. 15 of 17. This statement is verifiably false based on the record.  David never made such a statement, and the statements he did make in the UDRP proceeding regarding the "registration" dates of the domains were that they were created in January of 2011 and July of 1998, statements that are verifiably true based on the evidence in the record (and that match Defendant's own statements in the UDRP complaint).  *See* Doc. 92-2 at pp. 131, 189 and 194 of 201, and Doc. 11-1 (Defendant's UDRP Complaint) at pp. 5-6 of

134.  In spite of knowing this and 1 above, Defendant misrepresented throughout this proceeding that David "lied" in the UDRP proceeding.

3.     Defendant knew, prior to filing any pleadings in this case (and indeed, prior to its UDRP filing), that GoDaddy, not David Dent, had complete control of the content displayed at pages parked by GoDaddy.  Indeed, Defendant included the very GoDaddy contract that specifically points this out in its UDRP filing, and referenced that contract in this case.  See Doc. 11-1 (GoDaddy Registration Agreement attached to Defendant's UDRP Complaint) at pp. 43-44 of 134.  In spite of this knowledge, and without providing ANY evidence to the contrary, Defendant continued to falsely claim that David Dent had control of the content displayed at the disputed domains.

4.     Defendant knew, prior to filing any pleading in this case, that evidence it submitted in the UDRP proceeding (that it also referenced in this case) purporting to show advertising for which David was responsible on at least one of the disputed domains, was actually taken prior to David's purchase of the domain.  In addition, Defendant appears to have superimposed document title information on the document in a location intended to obscure the actual date of the document (Doc. 85-15).  See also Doc. 92 at ¶¶ 36-37; Doc. 92-2 at p. 43 and 127 of 201.

5.     There were no advertisements on lottostore.com or lottoworks.com at the time Defendant filed the UDRP complaint against those domains.  See Doc. 11-1 at Annex 3 (Defendant's Amended UDRP complaint).  Defendant admitted that "users are directed to on sale **default** pages" (effectively admitting that they are standard pages, not pages created by David).  (*Id.* At p. 10 of 134).  Defendant also admitted that the websites were "inactive" (i.e. not in use).  (*Id.* at p. 18 of 134*).  Furthermore, the domains were locked due to Defendant's UDRP filing, making it impossible for David to control them or their content.  Defendant knew this prior to any filing in this action.  In fact, Defendant knew lottoworks.com was locked pointing at the <u>previous</u> owner's parking pages before filing its UDRP complaint against David, because it was their original UDRP complaint (against the previous domain owner) that caused the domain to be locked pointing to the

previous owner's setting. Defendant misrepresented this each time it attributed this parking page to David rather than to the previous owner.  David had nothing to do with the contents of this page, yet Defendant repeatedly attributed it to David.

Additionally, Defendant knew, or should have known on reasonable investigation prior to any filing in this case (by, for example, simply clicking through the alleged content on parked lottostore.com web pages that it claimed contained advertising or offers for sale) that the content on the pages were not advertisements or offers to sell the domains by David.  See Doc. 92 at ¶¶ 9-11.  See also Doc. 91-3 at ¶¶ 5-8 and Exhibits F-R thereto.  Defendant could have easily seen this by clicking on ANY GoDaddy parked web page not set up for cash parking.  As noted previously, David had and has no control of what was displayed by GoDaddy's parking pages (due to GoDaddy's policies, which Defendant referenced in its own UDRP filings).  Furthermore, with respect to lottoworks.com, there were no ads during the time that David owned it.  Defendant misrepresented on multiple occasions that David placed offers for sale on the domain when in fact Defendant's own filings prove that these alleged offers predated David's ownership of lottoworks.com.  Nevertheless, Defendant repeatedly used content it knew David was not responsible for to falsely claim he was trying to sell lottoworks.com (David was never able to control the content of lottoworks.com due to the locking of that domain due to Defendant's UDRP filing).  See Doc. 92 at ¶¶ 3-4. In spite of this, including Defendant's knowledge of its own filings and statements therein, the dates of David's purchases, the dates of its own evidence, and its continued willful ignorance with respect to the nature of the content of the websites and David's inability to control them due to the lock, Defendant continued throughout this litigation to claim that the disputed domains included ads or offers for sale for which David Dent was responsible.  It knew all along that the pages were inactive, that they were "default" pages over which David had no control, that any alleged infringing content predated David's ownership, that there were no ads or offers for sale by David, and that even if there had been, David could not

1  be responsible for them due to locks (resulting from Defendant's actions) preventing

2  David from changing any dns settings or controlling the domains.

3      6.      Defendant refused to acknowledge that the disputed domains were locked when

4  Defendant filed its UDRP action, and that David had no ability to change the dns servers

5  (and thus control the content of the domains) once they were locked as a result of

6  Defendant's actions.  Defendant further refused to acknowledge that David at no time

7  profited from the domains or had cash parking set up (to allow him to profit from the

8  domains).  This refusal was in spite of clear voluminous evidence provided to Defendant

9  that proved this.  See, e.g.: Doc. 88-8 at Exhibits 12-140; Doc. 88-8 Exhibit 140 at p. 48

10  (email from GoDaddy confirming no cash parking or payments); Doc. 92-2 Exhibits 11-

11  23; Doc. 92-2 Exhibit 15 at pp. 32-33 (email from GoDaddy VP of Policy confirming

12  David's inability to make any changes or updates during a lock resulting from a UDRP

13  dispute); Doc. 92 at ¶¶ 16-18.   Furthermore, Defendant consciously and willfully chose

14  to avoid confirming the truth of this by refusing, on multiple occasions, David Dent's

15  offer, through counsel, to allow Defendant and Defendant's counsel access to David

16  Dent's GoDaddy account to see for itself that David could not make any changes to the

17  dns settings and other settings on his account, and that no cash parking was enabled on

18  any of his domains.  This offer was extended in writing to counsel for Defendant, and on

19  the record, multiple times, to counsel for Defendant by David Dent's expert Jefford

20  Englander during Mr. Englander's deposition.  Each such offer was refused by

21  Defendant.  David Dent's inability to use the locked domains goes directly to whether he

22  could use them at all, and thus to a key prong of Defendant's "cybersquatting"

23  allegations.  Courts in the patent context have found willful ignorance to be a relevant

24  factor in determining whether or not a case is exceptional.

25      The District Court clearly erred by failing to consider Rothschild's willful
26  ignorance of the prior art. In its Safe Harbor Notice and Cross–Motion for attorney
   fees, ADS included prior art that purportedly anticipates claim 1 of the '090 patent.
27  J.A. 293–94, 334–679, 685. In response to ADS's Cross–Motion for attorney fees,
   Rothschild submitted two affidavits relevant here. In the first, Rothschild's counsel
28  stated that he had "not conducted an analysis of any of the prior art asserted in

14

[the] Cross[ ]Motion to form a belief as to whether that prior art would invalidate"
the '090 patent. J.A. 708. In the second, Rothschild's founder echoed these
statements.

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858
F.3d 1383, 1388 (Fed. Cir. 2017).  Here, Defendant was willfully ignorant with regard to
David's inability to even use the domains because they were locked.

7.    David Dent provided thousands of pages of documents to Defendant during
discovery that clearly and overwhelmingly evidenced David's extensive and long-term
involvement in the gaming industry (including licenses, contracts with various
organizations, business proposals, screenshots of software, etc.) and that also clearly
demonstrated the generic/descriptive nature of the domain names David had purchased to
use in his gambling business.  See, for example, Doc. 87-1, Doc. 91-2 and Doc. 96-1 and
the exhibits thereto, referencing the voluminous evidence provided to Defendant in
support of David's position.  Nevertheless, Defendant continued to claim that David was
a cybersquatter, ignoring the evidence and relying on groundless arguments.  For
example, Defendant argued that because of the large number of domains David owned,
and the fact that many were inactive, David was a cybersquatter.  This in spite of the fact
that Defendant actually owned MORE domains than David at that time, many of which
were also inactive.  See Doc. 92 at ¶15.   In spite of awareness of overwhelming
evidence, including much from before the UDRP action or this case (for example, a
Dictionary clearly showing lotto synonymous with gambling), Defendant continued to
claim, without <u>any</u> evidentiary support, that David was a cybersquatter.

8.    Defendant on multiple occasions improperly cited the UDRP decision to support
its defenses and arguments in spite of knowing that such decisions are entitled to no
deference or consideration in this court.  In fact counsel for Defendant actually argued
this point in a filing in the *AirFX* case (see *AirFX* Doc. 65 at p. 2-3).

9.    Defendant failed to engage in due diligence and ignored its own evidence prior to
filing the UDRP action or its filings in this case.  As noted previously, for example,
simply clicking through on the  "Would you like to buy this domain? Learn More" button

on the GoDaddy default parking page would have revealed that this was not an offer for sale. A simple trademark search under David's name would have revealed his TRIMARK and TOP OF THE SHOP gambling trademarks. Defendant's UDRP filings also prove that it did in fact have knowledge of David's other gambling-related domains prior to any filing in the present action. See Doc. 11-1, Exhibit A (UDRP Complaint), Annex 11 at pp. 130-132 (showing a subset of the listing of David's domains which are obviously gambling-related, including terms like poker, bingo, casino, scratch and wins, lotto, games etc.). That list specifically includes trimarkgaming.com, the website for David's business with a link to demo versions of Trimark's lottery games and lottery betslips. Defendant admitted, well prior to any filing in the instant action, that it had inspected the domains in Annex 11, which include this Trimark site. "The Complapant further notes that the Respondent's email address is associated with a high number (62) of domain names, at least according to Whoisology database (see Annex 11). Most of these URL addresses, **during the Complainant's inspections**, resulted to be empty and/or offered for sale webpages." So Defendant (the complainant in the UDRP action), prior to filing anything in this case, had visited his Trimark site, a site that clearly demonstrated David's involvement in gambling-related endeavors. It had actual knowledge of David's involvement in gambling, yet continued to ignore this and the other evidence by claiming that David was a cybersquatter. See Doc. 92 at ¶12. The discovery responses and evidence provided to Lotto, and evidence it possessed prior to its UDRP filing, proved that Defendant was wrong about David and his business. In a patent context, other courts have used this as a factor in exceptional case determinations.

> The district court likewise did not abuse its discretion in concluding that Bayer failed to perform a diligent pre-suit investigation of its claims against Dow. Bayer's own witnesses testified against its contract interpretation. **We cannot say that the district court erred in reasoning that had Bayer conducted a more searching pre-suit investigation—at least of its own easily-obtainable evidence—it would have not filed suit. Nor did the district court err in treating pre-suit diligence as a factor in the totality-of-the-circumstance approach, as we have previously approved of this consideration in § 285 determinations.**

*Bayer,* 851 F.3d at 1307 (Fed. Cir. 2017) (emphasis added) (citing *Lumen View Tech. LLC v. Findthebest.com, Inc*., 811 F.3d 479, 481–83 (Fed. Cir. 2016).

This case is exceptional in light of its similarity to *AirFX* simply based on the facts.  This is even more true given that the standard since *AirFX* has been significantly relaxed (both in the elements to be demonstrated and the reduced burden).  And here, counsel for Defendant actually participated in the *AirFX* case, knew the facts of that case, knew the law, and knew that on almost identical facts the Plaintiff had prevailed and been awarded fees because of the exceptional nature of the case.

10.   Defendant's overall conduct in this litigation is an additional factor pointing to this being an exceptional case.  One thread that runs through the points above is an approach by Defendant that ignores known evidence, refuses to investigate evidence that would be determinative, or mischaracterizes evidence in light of what Defendant knew or should have known.  Much of this evidence was available to, or in the possession of, the Defendant prior to any filing in this case, and indeed, even before the filing of the UDRP action.  Repeatedly ignoring or mischaracterizing evidence is more consistent with intent than accident.  Defendant's actions with respect to the GoDaddy subpoena are consistent with this as well (actions that led to a finding that the record supported an award of attorneys' fees against Defendant in response to GoDaddy's argument that Defendant's conduct constituted bad faith warranting sanctions).  See Doc. 60 at p. 9; Doc. 80.  See also Doc. 69-1 at p. 5 of 19 (noting GoDaddy's requirement that communication from counsel for Defendant be written due to past misstatements by Defendant's counsel).  This is a pattern of behavior permeating Defendant's approach from the outset.  Many of Defendants assertions in this case amount to misrepresentations in light of the evidence known to, or easily discoverable by, Defendant.

Finally, the above items, many of which clearly show that Defendant should have known better even before filing the UDRP action, let alone opposing Plaintiff's current efforts to simply keep his domains, reinforce the conclusion that this case was without merit, litigated unreasonably, and exceptional.  In spite of the above, including specific

knowledge of Defendant's counsel of the standards and similarities of this case to *AirFX*, Defendant continued to litigate, refusing multiple offers from David along the way to simply walk away and allow him to keep the domains.  Plaintiff on multiple occasions clearly explained the relevant law, the weakness of Defendant's arguments, his intentions with respect to summary judgment, and his intentions with respect to fees, all to try to get Defendant to avoid all of this litigation expense.  Defendant was unwilling to listen, and indeed, as noted above with respect to some issues, was intentionally, willfully ignorant. Defendant's case was without merit, and Defendant knew it, yet proceeded.

Defendant's pattern of willfully ignoring evidence (both evidence it had prior to this action, and the voluminous evidence repeatedly provided by David) bely Defendant's true motives in this action.  This has never been about getting to the truth, it has been about a large corporation trying to use its superior resources to try to shake down a small business owner to obtain domains that it wants.  It has never been about protecting Defendant from domains that  include the word "lotto" (after all, there are over 82,000 domains including the word "lotto" in them – See Doc. 92-2, p. 199 of 201),  it has always been about Defendant attempting to wrest two domains that it badly wants to own from David by brute force.  That is the only logical conclusion that can be reached from Defendant's conduct and the undisputed facts.   One can only assume that Defendant saw an individual as the owner, rather than an entity, and counted on David to be passive and not be able or willing to put of the resources to defend his rights.  They counted wrong. The *Octane* standard also provides an additional reason for finding a case exceptional: to advance considerations of compensation and deterrence.  For the reasons outlined above, this is an additional reason to find this case exceptional.  Large, multimillion dollar corporations should not be able to force individuals or smaller businesses to choose between losing hundreds of thousands of dollars (even if they win) to keep their property, or surrendering, simply because the large corporation has deep pockets and a large litigation budget.  Potential UDRP plaintiffs need to know that if they force legitimate domain owners such as David to take them to court to protect their property from seizure

based on shoddy or non-existent cybersquatting claims, they have some exposure in terms of attorneys' fees.  Absent this, the bully will always win (right or wrong), because the little guy will have no choice but to surrender.

### c.  Plaintiff Is Entitled to Fees for Preparing This Motion

Plaintiff requests that the attorneys' fee award include fees spent preparing the present fee application.  *Cent. Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed. Cir. 1983) (citing *Codex Corp. v. Milgo Elec. Corp.,* 541 F.Supp. 1198, 1201 (D. Mass. 1982)).  If the Court awards David his fees, Plaintiff requests the opportunity to supplement the Statement of Fees to include time and expenses for preparing this motion.

In light of all of the above, because Plaintiff has shown by a preponderance of the evidence that this case is exceptional, Plaintiff should be awarded his attorneys' fees.

## III.   REASONABLENESS OF REQUESTED AWARD

Plaintiff prevailed on the merits of all claims for relief in this case, substantially altering the legal relationship between Plaintiff and Defendant entirely in Plaintiff's favor.  *Marctec, LLC v. Johnson & Johnson*, No. 07-CV-825-DRH, 2010 WL 680490, at *8 (S.D. Ill. Feb. 23, 2010), *aff'd,* 664 F.3d 907 (Fed. Cir. 2012) ("Where a prevailing party has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation[.]" (citations omitted)).  Plaintiff now seeks reimbursement of $243,991.50 in attorneys' fees.  Plaintiff's requested award is reasonable in light of the applicable factors outlined by LRCiv 54.2(c)(3), as supported by the Affidavit of Jeffrey W. Johnson, attached as Exhibit A, and Supporting Documentation as required by LRCiv 54.2(d).

*Time and labor required of counsel*.  The Johnson Affidavit sets forth the time and labor required by counsel in this matter, which is further detailed in the task-based itemized statement of fees and expenses attached as Exhibit B.

*Novelty and difficulty of questions presented*; requisite skill; and experience, reputation, and ability of the attorneys.  The Johnson Affidavit describes the attorneys who participated in this matter; they are members of a highly reputable law firm and have

significant trademark-related litigation and technical expertise.  This matter involved complex trademark issues including UDRP law, the ACPA, and other aspects of the Lanham Act, and the interplay of these areas of law with a WIPO UDRP ruling.  Accordingly, the significant time and attorney skill required for this matter was justified due to the complex factual, legal, and technical issues surrounding the domain names at issue, Defendant's trademarks, registrar policies, and the intricacies of domain name controls implemented by a registrar.

*Preclusion of other employment*; time limitations imposed by client or other circumstances.  The attorneys and paralegals who worked on this case spent significant resources devoted exclusively to this case, and to the exclusion of other matters.

*Customary fee*; whether the fee is fixed or contingent; nature and length of client relationship.  Plaintiff's fee arrangement is evidenced by the attached Fee Agreements (Exhibit C), which show a very reasonable hourly arrangement.  The fees are on par with if not below the customary fees in this forum for complex trademark litigation.

*Amount involved and the results obtained*; "undesirability" of the case.  David Dent sought to have his domains released to him, and to have his attorneys' fees covered.  The results obtained were what Plaintiff sought.

*Awards in similar cases.*  Trademark cases are frequently time and resource intensive, so the amount of awards in similar cases is on the same level if not higher than that requested in this case.  See, for example, the cases cited above in which attorneys' fees were awarded.  Plaintiff's fee request is less than the amount that has been awarded in other trademark cases of similar magnitude, and in line with AIPLA survey data.

*Other considerations.*  The remaining factors under LRCiv 54.2(c)(3) are either inapplicable or neutral.

In light of all of the above, Plaintiff requests that this Court award its attorneys' fees in the amount of $243,991.50.

Respectfully submitted this 19th day of May, 2020.

SCHMEISER, OLSEN & WATTS LLP

By:
*/s/Jeffrey W. Johnson*
_____

Sean K. Enos
Jeffrey W. Johnson
SCHMEISER, OLSEN & WATTS, LLP
18 E. University Drive, Suite 101
Mesa, Arizona 85201

Attorneys for Plaintiff

**Certificate of Service:**

I hereby certify that on this 19th day of May, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

The Honorable Deborah M. Fine
United States District Court

Brian Moran
1055 Washington Boulevard
Stamford, CT 06901
Tel: 203-462-7500
bmoran@rc.com

Attorneys for Defendant,
Lotto Sport Italia, S.p.A.

*/s/ Steven Adams*
Steven Adams